## CITY OF ROXBURY *vs.* BOSTON AND PROVIDENCE RAILROAD COR-PORATION.

An order of county commissioners, passed on the petition of mayor and aldermen or se-lectmen, under *St.* 1842, *c.* 22, which determines that the raising of a highway at a place named, where it is crossed by a railroad on a level, so as to pass over the railroad, is nec-essary for the security of the public, without defining the height above the railroad to which the highway shall be raised, the grade of the ascent, the mode and material of the structure, or the time within which it shall be made, is too indefinite to be specifi cally enforced by this court in equity under *St.* 1849, *c.* 222, § 5.

THOMAS, J.*  This is a bill in equity to compel the defendants to raise a highway in Roxbury, in compliance with an order of the county commissioners for the county of Norfolk. To this bill a demurrer was originally filed, on the ground that this court had no jurisdiction, and that the bill did not state a case which entitled the plaintiff to the relief prayed for, or any part thereof. That demurrer was overruled. 6 Cush. 424. The defendants then filed an answer to the bill.

The bill, in substance, sets forth the incorporation of the de-fendants, with power to locate and construct a railroad from a point near the city of Boston to the line of this commonwealth in Pawtucket or Seekonk, in the direction of Providence; the requisition of the charter, that if the railroad in its course should cross any highway, the railroad should be so constructed as not to impede or obstruct the safe and convenient use of such high-way; the power granted to the corporation to raise or lower any highway, so that the railroad might conveniently pass over or under the same; that the corporation, in locating their railroad, caused it to pass over a greatly travelled way in Roxbury, called Washington Street, and near to Wait's Mill, so called, on a level with the street, instead of over or under the same, as it ought to have passed, thereby greatly obstructing the use of said way, and rendering it unsafe and inconvenient; that this danger to the public travel induced an application by divers cit-izens of Roxbury to the mayor and aldermen; that the mayor and aldermen, after a view of the premises, deemed it reasonable

---

* BIGELOW, J. did not sit in this case.

and necessary for the security of the public that such highway should be raised or lowered so that the travel upon the highway might pass over or under the railroad at such crossing; that the mayor and aldermen gave written notice to the defendants to raise said highway, and the defendants neglected and refused so to do; that thereupon the mayor and aldermen, in December 1846, applied to the county commissioners of Norfolk to decide upon the reasonableness of such request, and whether or not the raising or lowering of said highway was necessary for the security of the public; and that the county commissioners, after due notice to the defendants, and a full hearing of the parties, determined that the request of the plaintiffs was reasonable, and that the raising of Washington Street at the place where it is crossed by the railroad on a level, near Wait's Mill, was necessary for the security of the public; and that the defendants utterly neglect and refuse to raise said highway. And the bill prays for a decree of the court to compel the defendants so to do.

The answer of the defendants admits their incorporation, the location of their road, and the crossing of the way called Washington Street, as set forth in the bill. It proceeds to allege an agreement made by the selectmen of the then town, now city, of Roxbury and the defendants, as to the mode of crossing said highway, and the execution of such agreement by the parties; and claims that by virtue of the agreement so made and executed the plaintiffs are estopped in equity to enforce this decree; but it having been found, as matter of fact, at the hearing before a single judge, that such agreement was not made, this part of the answer becomes immaterial. The answer admits that application was made to the mayor and aldermen of Roxbury; that they made an order thereon; that the respondents had notice of this order, and were requested to raise or lower the highway; that they did not comply with the request; that thereupon an application was made to the commissioners, an order passed by them, and that the respondents had notice thereof. The answer further sets out the existence in Roxbury of another highway, called Tremont Street, and avers that Tremont Street is so situ-

39 *

ated with relation to Washington Street that the order of the county commissioners to raise Washington Street at the point where the railroad crosses it, near Wait's Mill, cannot be executed without entirely blocking up Tremont Street, creating a barrier across it, and greatly obstructing and endangering the use of it. The defendants submit that they are not obliged in law to raise Washington Street, and that this court will not compel the performance of a decree so improvidently made.

To this answer there is a general replication.

It was proved, at the hearing, that Washington Street was a public highway at the time the railroad of the defendants was laid across it. Evidence was also offered as to the effect of the raising of Washington Street, in obstructing or blocking up Tremont Street, which is also a public highway. It is apparent from the inspection of the plans produced, as well as from the testimony, that the effect of raising Washington Street, so as to bridge over the railroad track, would be greatly to obstruct the travel from Tremont Street, eastwardly or westwardly, on Washington Street; and that unless Tremont Street were also raised, such travel would be wholly prevented.

The question now to be determined is whether the prayer of the bill shall be granted, and the defendants compelled by the decree of this court to comply with the order of the county commissioners.

The order of the commissioners is in these words : " After the said view and hearing, the commissioners were of opinion that the request of the petitioners was reasonable, and did consider and determine that the raising of said Washington Street, at the place where the same is crossed by said railroad on a level therewith, near Wait's Mill, in Roxbury, so as to pass over said railroad, is necessary for the security of the public."

An obvious question arises upon the face of the proceedings. Is this such a decree as can be enforced by a court of equity ? That which we are asked to compel the defendants to do is to raise Washington Street, at the place where the street is crossed by the railroad, so as to pass over the railroad. This is all. To what height above the railroad Washington Street is to be

raised, the grade of the ascent, the mode and material of the structure, the time within which the work is to be done; in relation to all these, the order is silent.

But two ways seem to be open to us : directly, or through a master, to assume and execute the functions of a board of county commissioners, and, after an examination of the premises, to determine in what manner and within what time the alteration shall be made; or to direct the corporation to proceed, without specific instructions or directions, to do the work, leaving it to be determined, after the work has been done, whether the alterations of the highway have been so made and the work so done as to be safe and convenient to the public.

In either case, this court must exercise functions appropriately vested in the county commissioners, for the discharge of which they are peculiarly fitted by their skill and experience ; functions for which this court has no aptitude, and which, it is plain, the legislature did not intend to give it.   On the other hand, the manifest intent of the statute seems to be that cities and towns may resort to this court, sitting in equity, to enforce the performance, by railroad corporations, of orders of county commissioners, only when so specific in their character that the corporation may know exactly what it is required to do, and this court can readily see that it has been done.

This view of the purpose and object of the statute is made plain by the consideration that, under the statute of 1842, c. 22, the selectmen of the town, or mayor and aldermen of the city, upon whose petition such decree has been made by the county commissioners, may, if the railroad corporation neglects or refuses to comply with the decree so made, themselves go on and execute it, and recover of the railroad corporation the expenses incurred in such execution.

But what is the nature of the decree which the selectmen or mayor and aldermen may execute, and recover of the corporation the expenses of its execution?   Are the selectmen or mayor and aldermen to exercise their own discretion in the matter, and, having simply the judgment of the county commissioners that the way should be raised, proceed to do it in such

manner, of such material, and within such time, as they may think fit?

It does not relieve the difficulty, to say that the work must be done in a reasonable manner, at a reasonable expense, and within a reasonable time. What is reasonable, in these respects, the safety of the parties requires should be determined beforehand, and fixed by the decree; otherwise, the selectmen or mayor and aldermen must go on and execute the work, and, after it is done, the right to recover depend wholly upon the judgment of a jury whether, under all the facts of the case, the alteration has been made in a reasonable manner; a risk, certainly, to which our towns and cities should not be subjected. Or if, on the other hand, the railroad corporation endeavors in good faith to comply with the judgment of the commissioners, such execution may prove wholly unsatisfactory to the town or city, and the railroad corporation may be called into court, and required to execute the order anew, on the ground that the work, as done, was not a reasonable and substantial compliance with the order of the commissioners. That is to say, for the result may be stated in a word, the order of the commissioners must afford a definite standard, by which the parties may be guided, and by conforming to which they will be safe.

And we are of opinion that the decree or order of the commissioners, which it was the intention of the statute the court sitting in equity should enforce, was a decree or order determining with such degree of precision the alteration to be made, that the defendants could see at once the nature and extent of the duty imposed on them, and which the mayor and aldermen, upon failure of the defendants to comply with it, could execute, and recover the expenses of the defendants.

The language of the statute of 1842, taken by itself, is, it is true, indefinite and general. "If the selectmen of any town, or the mayor and aldermen of any city, wherein any turnpike, highway or townway, crossed by any railroad, on a level therewith, is situated, shall be of opinion that it is necessary for the security of the public that said turnpike, highway or townway should be raised or lowered, so as to pass over or under said railroad, said

selectmen, or mayor and aldermen, may in writing request the corporation to which such railroad belongs, to raise or lower said ways; and if said corporation shall neglect or refuse so to do, said selectmen, or mayor and aldermen, may apply to the county commissioners of the county within which said town is situated, to decide upon the reasonableness of such request; and if said commissioners, after due notice and hearing the parties, shall decide that the raising or lowering of said ways is necessary for the security of the public, said corporation shall comply with said decision, and shall pay the costs of the application; and if the said commissioners shall be of opinion that such alteration of said ways is not necessary, the said selectmen or mayor and aldermen shall be liable to pay the costs of their application; and if said corporation shall unreasonably neglect or refuse to carry into effect the decision of said commissioners, such selectmen or mayor and aldermen may proceed to do it, and may institute and prosecute to final judgment and execution, in any court proper to try the same, an action of the case against said corporation, and recover the amount of all charges, expenses, labor and services occasioned by making such alteration, with costs of suit." *St.* 1842, *c.* 22.

But this statute is to be read with others *in pari materia*, and forming part of the same system. These, so far as applicable to this matter, are the Rev. Sts. *c.* 39, §§ 66, 67, 68. It is by the light afforded by these that the parties are to proceed.

The first step is taken by the selectmen of a town, or the mayor and aldermen of a city; whenever they are of opinion that the security of the public requires that a highway shall be raised so as to pass over or under a railroad, they may in writing request the corporation to raise or lower such way. If the corporation neglects or refuses so to do, the selectmen or mayor and aldermen may apply to the county commissioners. If the corporation does not refuse, it must proceed as in the case where the corporation itself elects to raise or lower a highway. Before making the alteration, the corporation is to notify the selectmen or mayor and aldermen, of the change or changes they propose to make. The selectmen or mayor and aldermen are, within

thirty days, to give notice in writing of any alterations in the plan proposed by the railroad corporation they may require to have made. If the parties do not agree what alterations are necessary, either party may apply to the county commissioners to determine what alterations shall be made, and their decision is to be final. If the commissioners decide that no alteration of the way is necessary, that is an end of the matter. If they decide that an alteration is necessary, they proceed to fix by their decree what the alteration shall be; and this decree, as in the analogous case of alterations in highways, (Rev. Sts. *c.* 24, § 71,) must be specific and definite, that one party may know what it is bound to do, and the other party what it has the right to require; and this court what it is, the performance of which it is called upon to enforce.

Such is not the character of the decree in this case. Nothing is determined but what is in its nature preliminary, that the public security requires that the way should be raised; leaving to the defendants an unlimited discretion as to the mode in which the alteration should be made; or to the mayor and aldermen, if the defendants should neglect to do it; or requiring of this court to exercise the powers of county commissioners, and to determine what alteration is fit and proper.

No one of these results was, we think, within the contemplation of the legislature. The statutes, viewed together, are reasonable and consistent, establishing a tribunal to determine these matters, peculiarly fitted for the discharge of such duties, and investing it with the power of deciding whether any, and if any, what alterations shall be made in the public highways. The legislature have subjected railroad corporations, whose roads pass the highways at grade, to the burden of raising or lowering such highways when, in the opinion of a competent tribunal, the public security requires it. But they not have left with the corporation the power to determine in what manner the alterations shall be made. Nor is the power left with the selectmen or mayor and aldermen. It is wisely vested in the board, which has, under the statutes, the general power of laying out, discontinuing and altering public highways.

This view being conclusive of the case, we have not felt it necessary to consider the other objections to the enforcement of this decree. *Bill dismissed.*

*C. B. Goodrich & D. A. Simmons,* for the plaintiffs.

*S. Bartlett, & S. Ames* of Rhode Island, for the defendants.