THE STATE OF KANSAS v. THE MISSOURI PACIFIC RAILWAY COMPANY, *et al.*

1. RAILROAD VIADUCT; *Mandamus to Compel Construction.* Where a duty rests upon a railroad company to construct a viaduct over its railroad tracks where the same cross a public street in a city, mandamus will ordinarily lie to compel the railroad company to so construct such viaduct.

2. ———— And the action may in some cases be prosecuted in the name of the state by the county attorney.

3. VIADUCT; *Power of City.* A city of the first class has the power in proper cases and in a proper manner, to order a railroad company to construct a viaduct over its tracks where the same cross a public street.

4. RAILROAD VIADUCT; *Construction, When not Enforced.* Where a city of the first class by ordinance orders three railroad companies jointly to construct a viaduct, and the ordinance is vague and indefinite with respect to the dimensions of the viaduct and the materials to be used in its construction, and its construction as ordered by the city would require a change of the grade of certain streets of the city, in violation of certain provisions of the statutes, *held*, that mandamus will not lie to enforce the construction of such viaduct.

*Error from Atchison District Court.*

ACTION of mandamus. The alternative writ, after alleging that the respective railroad companies are railroad corpora-

tions, and that the city of Atchison is a municipal corporation, and a city of the first class, then alleges as follows:

"And [the railroad companies] having the right-of-way and privilege to lay down their tracks over certain streets and alleys in the said city of Atchison, and to run and operate their cars, engines and trains over the same, and over and along an alley between Main street and Utah avenue in said city, and crossing Sixth street between said Utah avenue and Main street, and now and then have a large number of tracks and side-tracks running over and along said right-of-way and across said Main street, at said point, over which cars, engines and trains were and are continuously passing at all hours of day and night, said tracks and rights-of-way of said various railroad companies adjoining and running parallel with each other, and said streets so named being regularly laid out and dedicated streets of said city, and regularly opened and used for public travel, and running through and intersecting the populous portions of said city; that in the year 1882, it became and was necessary to regulate the crossings of said railways over said streets, and to regulate and provide cautions and prescribe rules and regulations to prevent accidents at crossings and on the tracks of said railways, and to require said railway companies to erect a viaduct over their said railroad tracks by such railroad companies, and it appearing that the public necessity and convenience required that the said Sixth street should be covered by a viaduct or bridge over said Sixth street, used and occupied by said railroad companies, with suitable, safe and convenient methods of approach to the same, with sufficient sidewalks on either side of the same, and the public safety and convenience of the public required the construction and erection of said viaduct, it was thereupon ordered by the mayor and councilmen of said city that the same be constructed, by resolution of the mayor and councilmen duly passed on the 29th day of December, 1882, of which said resolution and order the said railroad companies had due notice, but neglected and refused to erect or construct the said viaduct, or approaches thereto, and still refused so to do; that on or about the 20th day of August, 1883, the said necessity for said viaduct still existing as above set forth, the mayor and councilmen of said city, on the 20th day of August, 1883, duly passed an ordinance, setting forth the necessities of said bridge and viaduct, and requiring the construction thereof by said railroad companies over their tracks, rights-of-way across

said street, to be commenced within ten days thereafter, which said ordinance was duly approved and published, and a copy thereof, duly certified by the clerk of said city, was duly served upon said respective railroad companies in said city, county and state, upon the 25th day of August, 1883, and that said ordinance was in due form of law, and the said railroad companies were duly notified and required according to law, to construct and maintain said viaduct; that said railroad companies, though said necessities for said bridges and viaduct still exist, and the same are necessary for the safety and convenience of the public in the use of said street, and they have been duly required and notified to build and maintain the same, refuse and neglect to construct the same, or any portion thereof, or to take any steps, measures, or means for the commencement of said work of constructing said viaduct, and that without said viaduct said street at said crossing is unsafe for public travel and public use, by reason of said railroad tracks crossing the same, and by reason of the running and operation of cars, engines and trains over and across the same; that there is no plain or adequate remedy at law, by which said railroad companies can be compelled to comply with the law, or the duty imposed upon them in the construction and maintenance of said viaduct, and plaintiff is without remedy in this case, except by the authority of this court, by a writ of mandamus."

So much of the foregoing ordinance as is necessary to be quoted, reads as follows:

"SECTION 1. That it is necessary, to prevent accidents, and for the public convenience it requires, and the safety of the public demands, that a viaduct be constructed over the railway tracks crossing Sixth street, between Utah avenue and Main street, in the city of Atchison, and that it is necessary to have such viaduct constructed and said railway tracks and street bridged over, in order to render said street safe and convenient for the travel of the public, and to restore it to as safe a condition as before said railway tracks crossed the same, and that said crossing in its present state is unsafe and inconvenient for public travel.

"SEC. 2. That the Atchison, Topeka & Santa Fé railroad company, the Missouri Pacific railway company, the Central Branch Union Pacific railroad company, and all other companies owning a right-of-way and operating a railway over and through a right-of-way across said Sixth street, between Utah avenue and Main street, shall erect, construct and main-

tain over said railway tracks and road-beds of said companies,. along said Sixth street, and over the entire width thereof, a suitable and proper viaduct or bridge, substantially constructed and safe, with sufficient walls on each side of the roadway of the same, with suitable and necessary approaches thereto, at a reasonable and proper grade, and inclined so as to permit the same to be conveniently used as a street, and for public travel by footmen and vehicles, and at such height as to permit engines and trains to pass under the same without unnecessary danger to said structure.

"SEC. 3. That the city marshal of said city forthwith serve a copy of this ordinance, duly certified by the city clerk, upon each of the above-named railroad companies, and such other railroad companies, if any, as he may find having rights-of-way along and over said Sixth street, between Utah avenue. and Main street, and that he file in the office of the city clerk an affidavit showing the manner and date and service of a. copy of this ordinance; and that the same shall be notice to said railroad companies to commence the erection and construction of said viaduct; and that said railroad companies. shall thereupon, within ten days after the service of such notice, duly made upon them, commence the erection and construction of said viaduct in good faith; and that the same shall be completed within six months from the date thereof,. and in suitable condition for public travel."

The defendants filed separate answers, the substance of which is set forth in the opinion of the court. To each answer the plaintiff filed a motion to strike out and quash the same, and also filed a separate demurrer to each answer, on the ground that it did not state facts sufficient to constitute any defense to the plaintiff's alternative writ. At the November Term, 1883, the court overruled all these motions and demurrers. The plaintiff brings these rulings here for review. The opinion of the court states all the other necessary facts.

*John C. Tomlinson*, for plaintiff in error.

*James Hagerman, A. A. Hurd, Mills & Wells*, and *Geo. W. McCrary*, general counsel, for the Atchison, Topeka & Santa Fé railroad company, defendant in error.

*Everest & Waggener*, for the Missouri Pacific railway com-

pany and the Central Branch Union Pacific railroad company, defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of mandamus, brought October 6, 1883, in the district court of Atchison county, by the county attorney, in the name of the state of Kansas, against the Missouri Pacific railway company, the Central Branch Union Pacific railroad company, and the Atchison, Topeka & Santa Fé railroad company, to compel the defendants jointly to construct a viaduct over the defendants' railroad tracks where the same cross Sixth street, in the city of Atchison, Kansas. An alternative writ of mandamus was issued in the case and served upon each of the defendants, and each filed a separate answer to the alternative writ. The plaintiff then filed a separate motion to each answer to strike out and quash the same, and also filed a separate demurrer to each answer, setting forth as a ground for such demurrer, that the answer did not state facts sufficient to constitute any defense to the plaintiff's alternative writ. The court below overruled all these motions and demurrers, and the plaintiff excepted, and now brings the case to this court for review.

The alternative writ, after alleging in substance that the respective railroad companies are railroad corporations, and that the city of Atchison is a municipal corporation and a city of the first class, and after alleging that the defendant railroad companies had the right-of-way and privilege to lay down their tracks across said Sixth street, and to operate their trains over them, and that they did so lay down their tracks, and did so operate their trains over them, then alleges in substance that the public safety and convenience require that a viaduct be constructed over said tracks where the same cross Sixth street, and that proper approaches to said viaduct, and sidewalks, should also be constructed; and further alleges, that the city of Atchison, by an ordinance duly passed on August 20, 1883, ordered that the railroad companies should themselves construct such viaduct, approaches, etc.; and alleges

that the railroad companies have utterly failed and refused to do so, or to construct any part thereof. The foregoing ordinance provides, among other things, that the defendant shall construct the viaduct, " with suitable and necessary approaches thereto, at a reasonable and proper grade, and inclined so as to permit the same to be conveniently used as a street, and for public travel by footmen and vehicles, and at such height as to permit engines and trains to pass under the same without unnecessary danger to said structure."

The answers of the defendants are separate, and much more voluminous than the alternative writ, and therefore we shall attempt to give at most only the substance of them, which is as follows: Prior to the time when the city of Atchison took any steps to require the defendants to construct said viaduct over their tracks on Sixth street, the defendants, under their charters and by virtue of city ordinances, had already procured their rights-of-way across said Sixth street, and the city had already established the grade of such street, and the tracks of the railroad companies had already been so constructed as to conform to such grade, and such grade has never since been changed or altered, but remains the same as when first established, and it is a physical impossibility for the defendants to construct such viaduct without changing, impairing and destroying the grade as thus established, not only where the tracks cross the street, but also for a long distance along the street north and south of such crossing; and this for the reason that suitable approaches to make such viaduct accessible to teams and persons desiring to use the same must also be constructed along said Sixth street for a great distance north and south of such crossing. Also, on each side of Sixth street, at and near the place where the viaduct is required to be constructed, individuals have erected lasting and valuable improvements on their lots abutting on the street, with reference to the established grade, and the only means of egress from and ingress to their property is by using Sixth street opposite their property, and at such grade; and the construction of such viaduct, and the consequent change of the grade of Sixth

street, will render the street opposite their property inaccessible and useless, and will greatly damage their property; and the city has made no provision for compensating them for such damage, or for any damage or loss. One of the defendants, relying upon the established grade of the street, has laid out and expended a large sum of money toward the erection of a large freight depot, abutting on Sixth street, and by the erection of the viaduct the depot will in many respects be rendered useless, and the large sum of money thus expended will be wholly lost. In addition to the said freight depot, which is now in process of erection, the defendant has already constructed a freight depot abutting on Sixth street at the east side thereof, near the place where it is now sought to have the viaduct constructed, and the construction of the same will cut off all access to both this depot and the other depot from Sixth street, and such construction will render the use of the two depots impracticable after the entrances thereto from Sixth street have been obstructed as aforesaid; and the city of Atchison has made no provision for compensating the defendant for such inconvenience, loss, and damage. The erection of the viaduct will also require the construction of approaches extending four or five hundred feet north of the north line of the defendant's tracks and of their rights-of-way, as given and granted to them by the terms and conditions of the previous ordinances of the city, and such approaches cannot be built or maintained without intersecting and crossing Main street, and without extending across Main street many feet north of the north line thereof. The construction of such approaches as required by the ordinance and the alternative writ, would require and necessitate the destruction and blocking-up of Main street where the same crosses and intersects Sixth street; and if such viaduct and approaches are constructed of sufficient height to permit teams and vehicles to pass under the north approach to the same at Main street, such approach will extend a distance of six or eight hundred feet north of and outside of the rights-of-way of the defendant companies, which would require the construction of a bridge over White Clay

·creek, which crosses and intersects Sixth street some three or four hundred feet north of defendant's tracks and rights-of-way, and the construction of which bridge would cost many thousands of dollars; and the city of Atchison has made no provision therefor. It is a physical impossibility to construct the viaduct of sufficient height to permit the engines and cars ·of the defendant companies to pass under the same, and at the same time to give the proper inclinations to the approaches thereto within the said lines designated in said ordinance, to wit: between Utah avenue and Main street. The several defendants occupy unequal areas in Sixth street, and own an unequal number of tracks thereon, and after repeated efforts they have been unable to agree upon what proportion of the expense of ·constructing the viaduct, the approaches, sidewalks, etc., each should bear, or how such expense should be divided or proportioned between them, and have been unable to agree upon the material to be used, or the height of the viaduct,. or the lengths and inclinations of the approaches. There is no partnership or joint liability existing between the defendants in relation to the occupancy of the street with their several tracks, but each company acts separately.

The defendants also, by their answers and otherwise, raise the following objections to this proceeding: Mandamus will not lie to enforce an ordinance; nor will it lie against a railroad company in any case to compel it to construct a viaduct ·over its tracks where its road crosses a public street, for the duty supposed to rest upon the railroad company to construct such viaduct is not a duty "resulting from an office, trust or station." The state of Kansas, which is plaintiff in this action, is not the real party in interest, nor the proper party to sue, but if any person or corporation is entitled to sue it is the city ·of Atchison only. A city has no power, by ordinance or otherwise, to require a railroad company to construct a viaduct, and particularly the city of Atchison has no such power in the present case; but even if it has, still it did not properly ex-·ercise such power, and therefore the ordinance by which it

attempted to exercise such power is void; and it is void, for the reason that it is unconstitutional, in violation of the statutes, vague, obscure, indefinite, and uncertain, and no notice was given to the defendants with regard to its passage until some time after it was passed. It is unconstitutional and illegal for the following, among other, reasons: It attempts to require these defendants to construct said viaduct at their own expense, which is virtually to levy a special tax upon them in addition to the ordinary taxes levied upon all the tax-payers of the city of Atchison, and virtually to levy a tax upon them which is not levied upon any of the other tax-payers of such city. The defendants have by their charters, and by prior ordinances and contracts, and by constructing their roads with reference to the established grades of the streets, obtained vested rights to have the streets over which their tracks are constructed remain as they now are and at the present established grades; and these rights cannot legally be disturbed by any ordinance of the city, or even by a statute of the state. This ordinance, if enforced, will indirectly work a change in the grade of the streets of the city of Atchison, which is in violation of law and cannot legally be done; but the grade of the streets can only be changed by direct and express action on the part of the mayor and council of the city, and by express ordinance duly passed for such purpose. The ordinance does not designate or provide for determining what shall be the height or dimensions of the viaduct, or whether it shall be of wood, iron, or stone, or of some other material, or what shall be the height or inclination of either of the approaches, or how much or what part or proportion of the work shall be done by any one of the several defendants, or how the expenses of the work shall be divided or proportioned between them; but it simply requires that the defendants shall jointly construct a viaduct as heretofore stated.

The facts as set forth and alleged in the defendants' answers must be taken as true, for the answers have been attacked only by motions to quash and by demurrers; and, taking these facts as true, we think the decision of the court below is correct.

With respect to the law of the case, we agree in part with the plaintiff, and in part with the defendants.

The defendants claim that mandamus will not lie in the present case. Now assuming for the present that a railroad company may be legally and properly ordered by a city to construct a viaduct over its tracks where its railroad crosses a public street, and that such an order has been legally and properly made, then we would think that mandamus would undoubtedly lie against the corporation to compel it to construct such viaduct: provided, of course, that no other plain and adequate remedy exists. (High's Extraordinary Legal Remedies, §§ 319, 320, and cases there cited; §§ 276 and 290, and cases there cited; *Cooke v. B. & L. Rld. Co.*, 10 Am. & Eng. Railroad Cases, 333, and note, and cases there cited; *Cambridge v. C. B. Rld. Co.*, 48 Mass. 70; *I. & C. Rld. Co. v. The State*, 37 Ind. 489; *In re T. W. P. Co.*, 1 Spencer, 659; *Habersham v. S. & O. C. Co.*, 26 Ga. 665.)

A railroad company is a *quasi* public corporation, and all its rights and powers are conferred upon it not merely for the benefit of the corporation itself, but also in trust for the benefit of the public; and whenever it neglects or fails to perform any of its corporate duties, it may generally be compelled to perform the same by an action of mandamus. The duty resting upon a railroad corporation to perform whatever has been legally enjoined upon it by legal and proper authority, is a duty resulting from a public trust, and is also a duty resulting from a public station, and the public may enforce the performance of such duty by mandamus, whenever no other plain and adequate remedy exists; and the public may generally enforce the performance of such duty through the county attorney or the attorney general. Probably it would be more appropriate, however, in the present case, that the city of Atchison, instead of the county attorney or the attorney general, should prosecute the action to enforce the performance of the present supposed and alleged duty, as the city of Atchison is by law made the special servant and agent of the public for the control and management of all the public streets within its own bounda-

ries; but in some cases undoubtedly it would be entirely proper for the county attorney or the attorney general, in the name of the state, to prosecute the action for such purpose. For the purposes of this case, we shall assume, but without deciding the question, that the action has been rightfully brought in mandamus by the county attorney in the name of the state.

The next question to be considered is, whether a city of the first class has the power to order a railroad company to construct a viaduct over its tracks where the same cross a public street. We think it has. In this state, all cities are invested with the entire management and control of all public streets within their boundaries. They are the representatives of the public in this respect, and may generally make any order concerning the streets that could be made by the legislature or by any other agency or instrumentality acting for the public; and corresponding with these powers and privileges, are certain duties imposed, requiring the cities to keep their streets in a reasonably safe and proper condition for travel and transportation, with corresponding liabilities to be incurred for any failure to perform these duties. (*Gould v. City of Topeka,* 32 Kas. 485.) Also, cities of the first class — of which the city of Atchison is one — are endowed with the following other general and special powers and privileges, given to them by § 11 of the first-class-city act, as follows:

"The mayor and council . . . shall have power to enact ordinances: . . . *Seventh,* To adopt all such measures as they may deem necessary for the protection of strangers and the traveling public, in person or property; . . . *Twenty-first,* To regulate the crossings of railway and street railway tracks, and provide precautions and prescribe rules regulating the same, and to regulate the running of street railroads or cars, and railway engines, cars and trucks, within the limits of said city, and to prescribe rules relating thereto, and govern the speed thereof, and to make any other and further provisions, rules and regulations to prevent accidents at crossings and on the tracks of railways, and to prevent fires from engines, and to require such railroad companies *to erect viaducts* over their railroad tracks at the crossings of streets." (Laws of 1883, pp. 62 to 66.)

The provisions of the foregoing section must of course be construed in connection with §§ 13 and 18, and other sections of the first-class-city act. Said § 13 contains, among others, the following provision:

"SEC. 13. For opening, widening, extending and grading any street, lane, alley, or avenue, and for doing all excavating and grading necessary for the same, and for all improvements of the squares and areas formed by the crossing of streets, and for building culverts, bridges, *viaducts*, and all crossings of streets, alleys and avenues, the cost or contract-price thereof shall be paid out of the general improvement fund. . . " (Laws of 1881, ch. 37, § 13.)

Said § 18 contains, among others, the following provision:

"SEC. 18. . . . When the grade of any street, alley, lane or avenue shall have been so established, or shall have been heretofore established, and the grade thereof accepted by the council, such grade shall not be changed until declared necessary by resolution, by a three-fourths vote of all the council elected, and not then until the damage to property-owners, which may be caused by such change of grade, shall have been assessed by three disinterested appraisers. . . " (Laws of 1881, ch. 37, § 18.)

Construing all the foregoing statutes together, along with the other statutes applicable to the case, we would think that a city of the first class has the power to order a railroad company operating its trains over or across the streets of the city to so use the streets as not to render them unsafe or dangerous for public use. Indeed, we would think that the city might expressly order the railroad company to use flag-men or gates, to erect viaducts, or to do almost anything else within reason for the purpose of securing safety as against the railroad company itself to all persons or property in the rightful use of such streets. (*Cooke v. B. & L. Rld. Co.*, 10 Am. & Eng. Rld. Cases, 328, and note, and cases there cited.) A railroad company has no right to render the streets of a city unsafe or dangerous; and in all cases where a railroad company is permitted to use a street for railroad purposes, it should be compelled to restore the street as far as practicable to that same

condition of safety and usefulness as the street would occupy if it were not used for railroad purposes at all, and the railroad company should be compelled to maintain this condition of safety and usefulness as long as it continues to use and occupy the street. (*Cooke v. B. & L. Rld. Co.*, 133 Mass. 185; same case, 10 Am. & Eng. Rld. Cases 328, and note, and cases there cited; *The People, ex rel., v. C. & A. Rld. Co.*, 67 Ill. 118; *Eyler v. County Comm'rs*, 49 Md. 257; *Welcome v. Leeds*, 51 Me. 313; *C. R. I. & P. Rld. Co. v. Moffitt*, 75 Ill. 524; *Manley v. St. H. C. & Rly. Co.*, 2 H. & N. 840; *English v. N. H. & N. Co.*, 32 Conn. 241; *Burritt v. New Haven*, 42 Conn. 174.) It is certainly fair and reasonable to impose the cost of restoring a street to safety and of maintaining such safety, upon those who, for their own convenience and profit, have rendered the street unsafe; and it would certainly be unfair and unreasonable to impose such cost upon the public generally, or upon innocent owners of adjacent property. In speaking of viaducts in this connection we have intended to include viaducts only, and not grades, sidewalks or approaches.

But, holding as we do that cities may in some cases require railroad companies to construct viaducts, and holding as we do that county attorneys may in some cases enforce such construction by an action of mandamus, in the name of the state, still we do not think that the present action can be maintained by either the county attorney, or the attorney general, or the city of Atchison: First, the ordinance is too vague and indefinite to be enforced by mandamus or by any other specific remedy; (*City of Roxbury v. B. & P. Rld. Co.*, 68 Mass. 460;) second, its enforcement would ignore and indeed contravene some of the provisions of the statute of Kansas relating to street improvements. (First-class-city act, § 18, Comp. Laws of 1879, pp. 147, 148, ¶ 641; Laws of 1881, ch. 37, § 18; *Newman v. City of Emporia*, 32 Kas. 436.)

This ordinance is as vague and indefinite as the defendants claim; and it requires, as is claimed by them, a change in the grade of Sixth street for a long distance, and yet it does so

without resorting to scarcely any of the preliminary steps nec-
essary to be taken in order to effect such a change of grade.
The provisions of said § 18 have been wholly ignored in the
passage of the aforesaid ordinance, and the provisions of the
ordinance are irreconcilably in conflict with the provisions of
that section.   So far as this ordinance requires a change of the
grade of Sixth street, it is void; and being void to that extent,
the viaduct should not be constructed under its provisions,
for the viaduct, without a change in the grade of Sixth street,
would be worthless, and worse than useless — it would be a
nuisance.

There are other reasons why a writ of mandamus should
not be allowed in the present case, but we do not think that
it is necessary to state them.   We might, however, say that
we do not think that it is necessary that the city should have
given the railroad companies notice before passing the ordi-
nance requiring them to construct the viaduct.   Notice after-
ward, with an opportunity on the part of the railroad
companies to contest the validity of the ordinance and the
right of the city to compel them to construct the viaduct, is
sufficient.   As to notice and the opportunity of parties to con-
test the regularity and validity of proceedings had by city
officers, see the case of *Gilmore v. Hentig*, just decided.

We might also say that we have not examined critically the
question as to how much of the defendants' corporate rights
may have been obtained under and by virtue of their old ter-
ritorial charters enacted by the old territorial legislature, or
how small a portion of such rights have since been obtained
under and by virtue of the constitution and laws of the state;
but however inviolable any of their rights which they may
have obtained under their old territorial charters may be, it
cannot be denied that whatever corporate rights or powers
they have obtained under or by virtue of the laws of the state,
such rights are subject to modification and change by amend-
ment or repeal of such laws.   (Const., art. 12, § 1.)   It is
probable that their entire rights to operate their roads over or
across the streets of the city of Atchison have been obtained

solely and exclusively under the constitution and laws of the state, and under city ordinances.

The judgment of the court below will be affirmed.

All the Justices concurring.