THE CITY OF POTWIN PLACE v. THE TOPEKA RAIL-
WAY COMPANY.

1. STREET RAILWAY COMPANY —*Duties to Public*—*Mandamus*. The performance of the duties which a street railway company owes to the public to operate its lines in accordance with the provisions of a city ordinance under which its road was constructed may be enforced by *mandamus*.

2. ——— *Transfer of Franchises*—*Duties Assumed*. The city of Potwin Place granted to the T. R. T. Rly. Co. the right to construct a street railway on certain streets under an ordinance requiring a stated car service to be furnished by that company. Said company thereafter executed and delivered to defendant a deed, by its terms granting, assigning and conveying to the defendant all franchises, powers, privileges and immunities possessed by it and its line of road in plaintiff city. Defendant accepted said deed, and operated said line for a time. *Held*, That the defendant thereby assumed the performance of the duties toward the public which before rested on the grantor.

3. MANDAMUS—*Discretion of Court*. The granting of a writ of *mandamus* rests largely in the sound discretion of the court, and where it is asked to enforce the performance of a duty to the public, the interests of all the people concerned will be regarded, and the writ will be so framed as will best preserve and enforce the rights of all parties

*Original Proceeding in Mandamus.*

THE *City of Potwin Place*, a city of the third class, brings this action against the *Topeka Railway Company* to compel it to operate its line of street railway in the city of Potwin Place, which it acquired by purchase from the Topeka Rapid Transit Railway Company by deed dated April 5, 1892. The line in question was constructed by the Topeka Rapid Transit Railway Company under ordinance number 25, passed by the mayor and councilmen of the city of Potwin Place on May 10, 1889, by which the last-named company was granted the right to construct and operate a road for a term of 20 years along Willow avenue from the east to the west line of the city, on Elmwood avenue from Laurel avenue south to the city limits, and on Laurel avenue from the east to the west line of the city. The line was constructed

soon after the passage of said ordinance along Willow and Elmwood avenues, and on Laurel avenue from Elmwood east to Greenwood avenue, and was operated by that company until the execution of the deed before mentioned. By this deed the Rapid Transit company conveyed to the Topeka company all its lines of road in the city of Topeka and this line in Potwin Place, which is particularly described in the deed. The defendant soon thereafter proceeded to operate the line of road located in the plaintiff city in connection with its lines in Topeka, substantially as it had been before operated by the Rapid Transit company, and continued to so operate it up to about the 27th day of October, 1892, when it ceased to operate its line in Potwin Place, and it has failed to operate it ever since. Since the construction of said road, the city of Potwin Place has been enlarged by the addition of what was before termed Auburndale, so that in territorial extent it has been more than doubled, and largely increased in population. Said ordinance 25 gave the Topeka Rapid Transit Railway Company the right to construct its track and operate by electricity its road. It provides that "the cars of said company shall at all times be entitled to the track, and the driver of every other vehicle on the track or by the side thereof shall turn such vehicle out when any car comes up, so as to leave the track unobstructed for the free passage of the cars," and requires that "said railway shall be so operated that a car shall pass any given point each way on the route at least every 20 minutes for 12 hours, and at least once every 30 minutes for four hours, during that part of the day the road shall be operated." On the 2d day of May, 1892, the defendant also acquired by deed the property of the Topeka City Railway Company, which was operating horse-car lines in Topeka, one of which extends into Auburndale and is still operated by horse power. An alternative writ of *mandamus* was issued in this case on the 21st of November, 1892. The defendant filed a motion to quash, which was overruled at the April session, but no opinion was filed or announced on the legal questions involved. After-

ward the defendant answered, and the case was tried on its merits at the May session.

*John W. Day,* city attorney, *N. H. Loomis,* and *J. B. Larimer,* for plaintiff.

*Rossington, Smith & Dallas,* for defendant.

The opinion of the court was delivered by

ALLEN, J.: Various questions are discussed in the briefs which it will be unnecessary for us to consider at length, because the defendant company asserts that it desires to operate a line of road through the city of Potwin Place, but it objects to operating the line already constructed, because it claims that a better route could be selected both for the company and for the people of Potwin Place. The defendant claims that it desires, and has asked the passage of, an ordinance which will permit it to operate a line of road on a different route through the old city of Potwin Place, through the addition of Auburndale, in the direction of the insane asylum, and that it would be willing to construct and operate such route on what counsel term "any direct route," but the city and the company have failed to agree on a new line, and the defendant has refused to operate the old one. It is not seriously contended that the old line is unprofitable, but it is claimed that both the interests of the defendant and of the people of Potwin Place, and especially of those living in the western part, known as Auburndale, require that the electric-car service should be extended to the neighborhood of the insane asylum, as the people of Auburndale are now dependent entirely on a horse-car line for street-car facilities. The plaintiff asserts a willingness to grant defendant company a right to construct its line into Auburndale, as desired by the defendant, but insists on the operation of the line already constructed, and that no other route could be selected which would so well accommodate the people of the original city.

Defendant challenges the power of the court to compel it by *mandamus* to operate its road in Potwin Place. Counsel

concede that a railroad corporation can be compelled to perform its charter obligations, but insist that it is not bound by ordinance number 25, and that mainly for two reasons: First, that a city ordinance does not confer rights and create obligations which can be enforced by *mandamus* in the same manner as charter obligations can be; second, because it is not a party to the ordinance, and has not assumed the obligations imposed by its terms. Much is said in the briefs on the question whether the privileges granted to and the duties imposed upon the Rapid Transit company by ordinance 25 constitute a franchise, a contract, or a mere license, the defendant contending that they amount to but a license. The term "franchise" seems to be used by the courts with much laxity. In *Morgan v. Louisiana*, 93 U. S. 223, it is said:

"Much confusion of thought has arisen in this case, and in similar cases, from attaching a vague and undefined meaning to the term 'franchise.' It is often used as synonymous with 'rights, privileges, and immunities,' though of a personal and temporary character; so that, if any one of these exists, it is loosely termed a 'franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like."

In *Sioux City Street Rly. Co. v. Sioux City*, 138 U. S. 107, it is said:

"The right to operate the railway in the streets is a franchise obtained through power given to the city by the state, but the state reserved the power to regulate such franchise and impose conditions upon it."

In *Street Rly. Co. v. Nave*, 38 Kas. 744, it was held that "where a city authorizes a street railway company to occupy a certain street and construct a railroad thereon at any time within six months after the authority is granted, the

privilege so given must be used, if at all, before the expiration
of the time limited," and that the permission so conferred was,
until actually availed of by the company, a mere license which
the city could revoke.    The question was not presented in
that case as to the rights of the parties after the railway com-
pany had expended money on the faith of the ordinance in
constructing its lines, and had obstructed the street by placing
its roadbed and appliances for operating the same thereon.

We think it unnecessary in this case to nicely discuss the
use of words.    The substantial question we have to decide is
whether a duty which the law enjoins rests on the defendant,
as a corporation, to operate its road.    That corporations may
be compelled by *mandamus* to perform their duties to the
public, is now well settled. (Merrill, Mand., §§ 157, 158, 159;
*U. P. Rly. Co. v. Hall*, 91 U. S. 343; *The State v. Railroad
Co.*, 29 Conn. 538; *Haugen v. Water Co.*, 28 Pac. Rep. 244;
*Railroad Co. v. The State, ex. rel.*, 37 Ind. 489; *The State v.
Mo. Pac. Rly. Co.*, 33 Kas. 176; *Smalley v. Yates*, 36 id. 519.)

By the provisions of the ordinance, the Rapid Transit com-
pany obtained the right to construct its roadway in the public
streets, to maintain and operate it, to transport passengers
and parcels by means of electrical power, to collect charges
and tolls therefor.    These privileges were not granted to the
company solely for the company's benefit, but rather that the
citizens of the plaintiff city might have the benefit of an im-
proved mode of travel — that they might enjoy the benefits
of one of the inventions of the age.    By the terms of the or-
dinance, the rights of the company were defined and its
duties to the public declared.    The company accepted the
provisions of the ordinance, and constructed its road under
the leave thereby obtained.    May it now disregard the obli-
gations imposed on it by its terms?    May it still encumber
the streets of the city with its track, poles, wires, etc., and re-
fuse to operate its road?    It is said that the performance of
only charter obligations can be compelled by *mandamus* —
that the charter of the defendant company does not require it

to operate a line of railway in the city of Potwin Place. The obligations imposed on a railroad company are seldom defined with any degree of particularity by the terms of its charter, and this is especially true of street railways, and in this state, where all corporations are formed under general laws. It is true that the company gets its charter under the general law of the state, but the right conferred by the charter of a street railway company incorporated for the purpose of operating a street railroad in the city of Topeka is but a barren grant until it is given form and force by an ordinance of the city permitting it to enter on the streets and construct and operate its lines. From the state directly it derives but the bare power to exist. Its vital force comes from the state, indeed, but through the subordinate agency of the city council, which is given power by the legislature to fix the terms and conditions on which it may actually carry out the purposes of its creation.

Now, while it is true that both the Rapid Transit Railway Company and the defendant, having obtained charters from the state, and also ordinances from the mayor and council of the city of Topeka, granting them the privilege of operating within the city of Topeka, were in a position to carry out some of the purposes of their organization, and might be said to have an active existence, they were still, so far as their operations in the city of Potwin Place were concerned, wholly without power. In no way whatever could they obtain the right to operate a railway within the limits of Potwin Place except by authority of the mayor and council of the city. Having accepted the rights and privileges conferred by the ordinance, we think the duty rests on them, in favor of the plaintiff city and its citizens, to render them the service for which the privilege was granted. While there may be some doubt as to whether this ordinance granted the Rapid Transit company a franchise within the strict definition of the word, it is extremely difficult to perceive wherein the rights conferred substantially differ from a franchise derived immedi-

ately from the legislature. It is certainly a grant in the nature of a franchise, and one which imposes on the company duties towards the public. A street railway may be compelled by *mandamus* to perform these duties. See Booth, Street Railways, § 65, and authorities there cited. Whether the company's duties be denominated contract obligations, or duties imposed by the terms on which a franchise has been granted, the duties are essentially public, and such that no adequate remedy in the ordinary course of legal proceedings is afforded the plaintiff and its citizens.

1. Street railway company—duties to public—mandamus.

As to the second contention, that the defendant company is not bound by the ordinance because it is not a party to it, we think it clear that the Rapid Transit Railway Company had the right to sell its property in Potwin Place. That property would be valueless without the power to operate it. The defendant company is incorporated for the purpose of operating lines of street railway in Topeka and vicinity. The deed from the Rapid Transit company to the defendant, by its terms, grants and conveys to the defendant "all and singular the rights, franchises, powers, privileges and immunities possessed by it," and conveys by special description the line on Willow avenue, Elmwood avenue and Laurel avenue in the plaintiff city. We fail to perceive any valid ground on which the defendant can impeach its own title to this property, or its right to operate it under ordinance No. 25. If it takes the property and the privileges conferred by the deed and the ordinance, clearly it must take them subject to the burdens and laden with the responsibilities declared in the ordinance. The defendant stands in neither better nor worse position in relation to the people of Potwin Place than did the Rapid Transit company. It is not pretended that its charter is not broad enough to warrant its operating this line of road. On the contrary, it affirms its desire to further extend its lines within the limits of plaintiff city. It is conceded that the granting of a writ

2. Transfer of franchises—duties assumed.

of *mandamus* rests somewhat in the discretion of the court. In this particular case, it should be issued only in the interest of the public, and to enforce the performance of a public duty by the defendant. The defendant contends that it will be impracticable to operate the entire line as constructed in Potwin Place and also to operate an extension through Auburndale to the asylum in a manner satisfactory to the public. We, of course, have no right to direct the plaintiff to grant the defendant company any new privileges, but, in enforcing the plaintiff's rights, we ought to take into consideration all of the circumstances, and the needs of all its citizens. The portion of the route which the defendant especially objects to operating is the part on Elmwood avenue from Park to Laurel avenue, and the two blocks on Laurel avenue. The two blocks on Laurel avenue extend east from Elmwood avenue, and therefore lie in the opposite direction from the Auburndale addition. In order to operate these two blocks in connection with an extension through Auburndale towards the asylum, it would be necessary either to double the distance on Laurel Avenue each trip, or to alternate cars on each route. The evidence leaves us in doubt as to whether this could be done in a manner satisfactory to the people, and, as we are unwilling to make any order which is likely to prevent adequate service being rendered to the people of the Auburndale addition, we think, in the exercise of our discretion, we should not peremptorily require the operation of the two blocks on Laurel avenue.

3. Mandamus—discretion of court.

It appears that the present terminus of the defendant's operated electric line is at the corner of Sixth and West streets; that the company has the right, under the ordinance passed by the mayor and council of the city of Topeka, to construct its lines on any of the streets of Topeka. It is therefore entirely practicable for it to connect its lines now in operation with the east end of the Willow avenue line, and we think it should be required to operate the Willow avenue and Elmwood avenue lines in accordance with the terms of the ordinance.

A. T. & S. F. Rld. Co. v. Comm'rs of Sumner Co.

A peremptory writ will be awarded requiring the defendant to operate its line along Willow avenue, and on Elmwood avenue from the south end thereof to Laurel avenue, and judgment will be rendered against the defendant for costs.

All the Justices concurring.