## STREET RAILWAY'S SHARE OF A GRADE ELIMINATION.

Court of Appeals for Hamilton County.

THE CITY OF CINCINNATI, BY ALFRED BETTMAN, ITS SOLICITOR,
v. THE CINCINNATI TRACTION COMPANY AND THE CIN-
CINNATI STREET RAILWAY COMPANY.

Decided, July 6, 1916.

*Grade Crossings—Division of the Expense of Elimination—Street Rail-
way Company Not a Necessary Party—Where Agreement for Elimi-
nation is Entered Into—Between Municipality and Steam Rail-
road Company—Liability of Street Railway for Part of the Cost—
Not Affected by Change in Location of Street—Reasonableness of
the Change and of the Cost Assessed Against the Street Railway
Company.*

1. The authority vested in municipalities for the elimination of grade
   crossings is a police power which is continuing in its nature and
   is in no way limited by the franchise of a traction company whose
   tracks occupy the street.
2. A municipality in contracting with a steam railway company for the
   elimination of a grade crossing is not bound to make the traction
   company occupying the street a party thereto, but may proceed
   with the improvement without notice to such company.
3. A street railway franchise in the street in no way limits the right of
   the municipality to change either the grade or the location of the
   street as the public necessity or convenience may require, particu-
   larly where the reasonableness of the change is not questioned, and
   the traction company must adapt its tracks to the changes so made.
4. The grade crossing in the instant case was eliminated by the building
   of a viaduct. Sixty-five per cent. of the cost was paid by the steam
   road and thirty-five per cent. by the city. The city then ob-
   tained a judgment, based upon a verdict, against the traction com-
   pany occupying the street for its share of the cost of the improve-
   ment, which was fixed at $61,220.09, which was something less than
   one-half of the share paid by the city. *Held:*
That in view of the evidence and all the circumstances surrounding the
   improvement and the benefit to and the saving which it will effect
   for the traction company, the proportion of the cost which it is
   asked to pay is reasonable, and a judgment is awarded similar
   to that entered in the lower court.

*Walter M. Schoenle,* Solicitor, and *Constant Southworth,* Assistant Solicitor, for plaintiff.

*Joseph Wilby* and *Ellis G. Kinkead,* contra.

JONES (Oliver B.), J.

This action was brought by the city of Cincinnati to compel the Cincinnati Traction Company and the Cincinnati Street Railway Company to pay to the city their share of the expense incurred in the elimination of the grade crossing of Ludlow avenue and the Baltimore & Ohio Southwestern Railroad, and to have the judgment for such share of said expense declared to be a lien on the property of said companies.

Under the provisions of Sections 8874 to 8894, inclusive, of the General Code, the city of Cincinnati in conjunction with the Baltimore & Ohio Southwestern Railroad Company provided for the elimination of the grade crossing of Ludlow avenue over the tracks of the steam railroad company. In so doing a bridge or viaduct was constructed from a point on Ludlow avenue southeast of the Miami canal, running in a direct line to Spring Grove avenue at the same place that the former line of Ludlow avenue intersected it, and that part of the old line of Ludlow avenue included between the north and south lines of the right-of-way of the Baltimore & Ohio Southwestern Railroad was vacated and the grade crossing entirely eliminated, all of the through travel over Ludlow avenue going above said railroad tracks on the new Ludlow avenue viaduct, including the street railway travel of the defendant company.

The Cincinnati Street Railway Company is the owner of the street railway tracks and franchise, and has leased same to the Cincinnati Traction Company which is operating them. Previous to the elimination of said grade crossing, a double track road was operated over that part of Ludlow avenue lying west of the point where the east end of the Ludlow avenue viaduct was constructed and across the Baltimore & Ohio Southwestern railroad track on grade. After the vacation of said grade crossing such operation did not continue, but instead the line was operated over the new viaduct.

The total cost of the viaduct so constructed was $354,023.63. Sixty-five per cent. of the cost was paid by the Baltimore & Ohio Southwestern Railroad Company as provided by statute. The city paid thirty-five per cent., amounting to $126,692.13, and by ordinance required said street railway and traction companies to bear one-half of the portion payable by it as their reasonable proportion of the cost assumed by said city. Each of the defendants denies the right of the city to collect any part of said cost, and in the event that any part should be so chargeable to either of said companies insists that the amount sought to be recovered in this case is excessive and above the amount properly chargeable against them.

The case was tried to a jury in the court of common pleas, and resulted in a judgment against the Cincinnati Traction Company in the sum of $61,220.09, with interest at six per cent. from April 5, 1915; which judgment was declared to be a lien on all the property, real and personal, of the defendant the Cincinnati Street Railway Company.

The Cincinnati Street Railway Company took an appeal from said judgment; and error proceedings were also prosecuted by both companies, to secure a reversal of said judgment. The cause was heard in this court on the appeal of the Cincinnati Street Railway Company.

Numerous questions were raised in the oral arguments and briefs of both parties. The main questions were all considered and disposed of in the case of *Northern Ohio Traction & Light Company* v. *City of Akron,* in which the opinion of the court of appeals appears in 23 C.C.(N.S.), 497, where Sections 8892, 8893 and 8894 were held to be constitutional. This decision was affirmed by the Supreme Court in a journal entry found in 91 O. S., 382. In that case it was held that the amount fixed by an ordinance of a city, as the proper amount to be paid by a street railway existing in a street where a grade has been eliminated, was a proper basis upon which to institute an action in court, but that the recovery to be had by the city against said street railway for such share of expense should be for such amount as the jury should determine to be a reasonable portion of the cost of the

improvement. And in that case the amount fixed by the jury in its verdict, for which judgment was rendered and upheld by the Supreme Court, was less than the amount claimed by the city and fixed by its ordinance.

The proceedings in this case have been had along the same lines as those in the Akron case, the only difference being that in the instant case two companies are interested in the street railway, one as lessor and the other as lessee, the lessee being bound by the terms of its lease to pay all obligations arising similar to the claim here under consideration; and the lessor company being interested only to the extent of the lien upon its property in the event of the failure of the lessee company to pay any judgment obtained for such expense.

The power authorized to be exercised by a municipality in the elimination of a street grade crossing over a steam railroad, under the sections above referred to, is an exercise of the police power, which is a power continuing in its nature and not in any way limited by the extent of the grant or franchise. *Gas Light & Coke Co.* v. *Columbus,* 50 O. S., 65; *Wabash R. R. Co.* v. *Defiance,* 52 O. S., 262.

In *Missouri Pacific Ry.* v. *Omaha,* 235 U. S., 121, it was held by the Supreme Court:

"A railway company may be required by the state, or by a municipality acting under the authority of the state, to construct overhead crossings or viaducts over its tracks at its own expense; the consequent expense is *damnum absque injuria* or compensated by the public benefit in which the company shares and is not a taking of property without due process of law." (Syl. 1.)

"In the exercise of the *police power* the means to be employed to promote the public safety are primarily in the judgment of the Legislature, and the courts will not interfere with duly enacted legislation which has a substantial relation to the purpose to be accomplished, and does not arbitrarily interfere with private rights." (Syl. 2.)

And in this case the court in its opinion at page 129 said, in regard to the matter of charging part of the expense to the street railway occupying such street:

"It may be that it would be more fair and equitable to require the street railway to share in the expense of the viaduct, and if the municipality had been authorized so to do by competent authority, it would have been a constitutional exercise of the police power to have such division of expenses."

And in the case of *Chicago & Alton R. R. Co.* v. *Transbarger,* 238 U. S., 67, the court upheld a statute requiring the owners of a railroad to provide means for passing water under their railway embankment long after it had been constructed, as a matter of police regulation.

Nor was it necessary in arranging for this improvement that the street railway company or the traction company should be notified of the proceedings or that either should become a party to the contract between the city and the steam railroad company.

In *C., B. & Q. R. R. Co.* v. *Nebraska,* 170 U. S., 57, the court says, page 76:

"In *State* v. *Missouri Pacific Ry.,* 33 Kan., 176, the power of the city of Atchison to compel the respondent to construct viaducts was sustained under legislation similar to that herein involved and, referring to the subject of notice, the court, per Judge Valentine, said: 'We do not think it is necessary that the city should have given the railroad companies notice before passing the ordinance requiring them to construct the viaduct. Notice afterward, with the opportunity on the part of the railroad companies to contest the validity of the ordinance and the right of the city to compel them to construct the viaduct is sufficient.''

And on page 77:

"So, in the present case, while no notice may have been given to the railroad company of the pendency of the ordinance, and while they may not have been invited to participate in the proposed legislation, yet they had an opportunity to, and did in fact, put in issue, by the answer, both the validity of the ordinance and the reasonableness of the amount apportioned to them respectively for the repair of the viaduct in question."

The rights of the street railway company are to the use of the street, and the fact that they enjoy such a franchise in no

way limits the rights of a municipality to either change the grade of that street or to alter its course or location as public necessity may require, and it becomes the duty of the street railway company to adapt its tracks and location to such requirement of the city. And so far as the amount to be paid by it is considered, that is to be fixed not as a matter of determination by the city by ordinance, but as a matter of adjudication by the court subject to the legislative restrictions that have been provided.

There is no question as to the right of the city to change the location of Ludlow avenue in making this improvement. Such power is expressly conferred by the terms of Section 8875, General Code. The only portion of Ludlow avenue which has been entirely vacated is the part lying between the north and the south lines of the right-of-way of the B. & O. S. W. railroad— that is, the crossing itself, within the lines of the railroad right-of-way. The other two parts of Ludlow avenue as it previously existed still remain public streets being each a cul-de-sac running from either terminus of the new viaduct to the line of the railroad. But because of the vacated portion at the crossing it becomes an impossibility to cross the railroad on Ludlow avenue at ʳrade. The street railway, therefore, being unable to continue the use of its franchise over that crossing, was compelled by reason of the change in the lines of Ludlow avenue by the construction of the viaduct, to transfer its track and operation from the old to the new line of Ludlow avenue between the termini of the viaduct. In other words, the effect is the same as though the entire old portion of the avenue between those termini had been vacated, so far as continuous passage is concerned.

There is no question but that if a street is straightened, as was done by the construction of this viaduct, or if its location is changed by a detour or shifting of its lines to either side of its old lines, that the street railway could claim a right under its franchise to occupy and use the new lines of the street; and such would be the case in this instance regardless of the stipulation made between the parties that the use and occupation of the viaduct should in no way prejudice their rights in this case. And

while upon this subject, it might be said that the admission of evidence as to the amount of travel over the viaduct is not regarded as an infraction of this stipulation.

Defendants however have undertaken to argue that this case does not come within the strict literal terms of Section 8892, for the reason that Section 12 of the ordinance recites "that the company operating the street railroad *over the present intersection* shall pay a portion of the city's expense to be hereinafter fixed by ordinance," and that the ordinance which fixes that portion, in the third paragraph of its preamble, states that "Whereas the tracks of the Cincinnati Traction Company, a corporation under the laws of Ohio, *cross the right-of-way of said railroad company at a point where under the plans and specifications it has been determined to construct such improvement."* They argue that because the old crossing at grade is some two hundred and fifty feet further east than the location of the viaduct where the new crossing passes above grade, the "point" of crossing can not be identical in the new and in the old, and therefore that Section 8892 does not apply. Such argument is clearly without merit. The same argument might be made as to any sub-grade or overhead crossing because the place of crossing, even though the lines of the street or the lines of the viaduct or subway were identical now with those of the old, the actual tracks would be either many feet above or below the point of the old crossing.

No question is raised in this case as to the reasonableness of the change in location. In fact it is shown by the record that the change is a great benefit both to the traveling public and to the defendants, and that the expense is greatly reduced by the straightening in the line of Ludlow avenue by means of the new viaduct, which forms practically the hypotenuse of a triangle of which the old lines of Ludlow avenue form the other two sides.

The power to so change a highway in separating grades in the crossing of a railway and a highway is well illustrated in the case of *Davis* v. *Village of Hampshire,* 153 Mass., 218; and an interesting nisi prius decision upon this proposition is found in the case of *Stoner* v. *P., C., C. & St. L. Ry. Co.,* 9 N.P.(N.S.), 337,

in which a railroad subway crossing was substituted for two railway crossings, being 990 feet away from one and 772 feet from the other.

Defendants, however, insist that the charge as fixed by the judgment below is excessive and far beyond any reasonable charge that should be asserted against them, for the reason that the life of the franchise under which they operate is a matter of only thirty-one years' duration, while the viaduct is supposed to be practically indestructible. The proportionate amount of the respective contributions that should be made by the steam railroad company, by the public, represented by the city or county, and by the street railway company operating over the crossing so changed, is primarily a matter for legislative action. The General Assembly has laid down the rule fixing the proportion of the steam railroad at sixty-five per cent., and that of the city or county at thirty-five per cent.; and the power is given under Section 8892, G. C., for the municipality to charge a proper amount of its share against a street railway using the street at such crossing. This amount has been fixed by the General Assembly at not to exceed one-half of the thirty-five per cent. charged against the city. Considering the situation of the old grade crossing and the conditions surrounding it, the necessity for its elimination and the benefits accruing from the construction of the new viaduct, we are of the opinion that no case could be found where the propriety of charging the maximum amount allowed by the Legislature would be greater than the one under consideration here, and we therefore feel in a measure bound by the legislative expression of the proper portion to be charged against the street railway company; and while it is argued that the balance of the life of the present franchise under which the street railway is operating is only thirty-one years, it must be remembered that the policy of the law of Ohio, outside possibly of this particular franchise, has never been to permit the granting of a franchise beyond the term of twenty-five years; so it can not be considered that such an argument would prevail as against the expressed policy of

the Legislature. But aside from this policy of the Legislature, we think the amount of the judgment in the lower court was fully sustained by the evidence submitted.

The evidence shows that in the opinion of experts the same travel, other than that by street railway, could be accommodated by a viaduct ten feet narrower than the one actually constructed. In other words, not considering the travel in the street cars, a viaduct fifty feet in width without a street railway would accommodate the same travel as does one sixty feet in width where a railway has been placed upon it. And the cost of the additional ten feet of the viaduct was shown to be from about $64,000 to $66,000.

It is also shown that a considerable saving would be made to the defendants in the expense of watchmen and maintenance of tracks, frogs and repairs, each year, which if capitalized for the thirty-one years of the franchise still to run would represent a capital of from more than twenty-five to twenty-eight thousand dollars, depending upon the rate of interest at which it was figured; that the rental value for the balance of the term of the franchise figured upon only the amount of the judgment would be from $47,000 to $51,000; that in addition to these figures a great advantage is obtained by the defendant companies by the removal of probability of damage that may be caused by possible accidents at a grade crossing, the amount of which is not subject to accurate calculation.

It was further shown that new double tracks to the value of $15,200 had been included in the construction of the viaduct, as well as trolley poles to the value of $980.

The defendant companies have not indicated accurately what they regard as the proper charge to be placed upon them for their share of the expense of this improvement. The amount of the judgment below being considerably less than the maximum as fixed by the General Assembly in Section 8892, G. C., and the amount having been fixed in the trial below by the verdict of a jury upon a full and fair presentation, this court upon a full consideration of all the evidence is not inclined to fix a

different amount, but is of the opinion that the amount found by the jury and fixed by the judgment of the court of common pleas from which this appeal is taken, is a proper finding and amount, and a reasonable charge to be made against the defendants for their share in this improvement.

A judgment may be taken in this court similar to that in the court below.

JONES (E. H.), J., and GORMAN, J., concur.