THE STATE OF FLORIDA *ex rel.* W. H. ELLIS, AS ATTORNEY-GENERAL OF THE STATE OF FLORIDA, AND J. M. BARRS, AS SPECIAL COUNSEL OF THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Plaintiffs,* v. ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Defendant,* v. SEABOARD AIR LINE RAILWAY, A CORPORATION UNDER THE LAWS OF THE STATE OF VIRGINIA AND NORTH CAROLINA, *Defendant,* v. JACKSONVILLE & SOUTHWESTERN RAILROAD COMPANY, A CORPORATION, *Defendant.*

1. When the recitals and allegations of an alternative writ of mandamus construed together charge a general violation of the duty of respondent railroad company to put into practical operation a system or schedule of rates for the transportation of phosphate, prescribed by the Railroad Commissioners, the writ is

State *ex rel.* Att'y-Gen. v. Atlantic C. L. R. R. Co. *et al.*—Syllabus.

not demurrable because it does not allege a specific instance of the violation of such schedule of rates.

2. When an alternative writ charges a general and total violation of the order of the Railroad Commissioners fixing a schedule of rates on phosphate, by a railroad company, in refusing to put such schedule or system of rates into operation, as required by the order of the Railroad Commissioners, specific instances of the violation of such order involve questions of the relevancy, competency and probative force of evidence, and not questions of pleading.

3. In mandamus, certainty of allegation is requisite, but if the alternative writ states the facts on which the demand is based with sufficient precision to express the right of the relator and the duty of the respondent in such a manner that the ordinary mind may easily apprehend them, this is all the certainty required to defeat a demurrer.

4. As a general rule material facts should be alleged by direct averment, and not by inference, but unequivocal averments will support implications that necessarily result from the facts alleged, on general demurrer.

5. This court takes judicial notice of the fact that phosphate is mined in some portions of the State Florida, and is an article of transportation.

6. The word "charge" and the phrase "put into effect" as used in the alternative writ are not indefinite or undeterminate in their meaning. To "put into effect" a rate is to charge and receive that rate when the article to which it applies is transported—in other words to give it practical operation. To charge a freight rate is to fix or demand such rate for the required service.

7. Railroad companies are inhibited by Chapter 4700, laws of 1899, from making unjust discriminations in rates, but there is nothing in the said act which limits the discretionary powers of the Railroad Commissioners to make reasonable and just rates, and it does not necessarily follow that in prescribing a particular rate lower than a general one the Commission have violated their authority. Circumstances may justify such lower rate and the act itself makes the rates and regulations prescribed by the Commission *prima facie* reasonable and just.

8. Mandamus will lie to enforce a continuing duty and is an appropriate remedy to compel the observance of a valid regulation of the Railroad Commissioners imposing specific public duties upon railroad companies.

This case was decided by Division A.

This is a case of original jurisdiction.

## Statement.

The above mentioned three cases against three separate corporations are founded upon alternative writs and demurrers thereto, in the same language and terms, and the opinion in the first case will be considered as applying to each of them.

Upon the petition of the relators an alternative writ of mandamus issued out of this court on March 7, 1904, alleging in substance: 1. The incorporation of the respondent and that since the eighth of October, A. D. 1903, it has controlled and operated as a common carrier divers lines of railroad wholly or in part within the State of Florida, and has been engaged in the transportation of freight and passengers over its lines, from points in Florida to points in Florida.

2. That the State Railroad Commissioners, pursuant to notice of their intention to adopt a freight rate of one cent per ton per mile on phosphate from points within Florida to points within Florida (except points where the proposed rates would raise the rates then in force, and that to such points the rates then in force should remain the same), met in the city of Jacksonville, on November 16, 1903, at which place and time the respondent and other railroads, pursuant to said notice, were given an opportunity to show cause, if any they had, why the proposed rate should not be adopted.

3. That at the said time and place, respondent and other railroads filed answers, and by their request, were given until November 28, 1903, to file their briefs and supplemental briefs, which briefs were filed and considered by the Railroad Commissioners, and afterwards, on December 17, 1903, the said commissioners, in session at Tallahassee, Florida, being satisfied that some of the then existing

State *ex rel.* Att'y-Gen. v. A. C. L. R. R. Co. *et al.*—Statement.

freight rates on phosphate from points in Florida to points within the said State, were unreasonably high, and should be reduced and based upon a mileage rate, ordered that the rate to be charged by all the railroads and common carriers doing business wholly or in part within the State of Florida for the transportation of phosphate from points in Florida to points within said State, should not exceed one cent per ton per mile, provided, that where the rate of one cent per ton per mile would raise any rate then in operation, that said rate of one cent per ton per mile should not be effective, but that the rate as then charged by said railroad companies was then and there adopted in and by said order of the said Railroad Commissioners, as their rate between such points.

4. That the said Railroad Commissioners then further ordered that where a shipment of phosphate should pass over two or more railroads in reaching its destination within the State of Florida, the initial line might charge one and a half cents per ton per mile for the first ten miles which said phosphate should be hauled.

5. That the Railroad Commissioners then further ordered that where a shipment of phosphate from points in Florida to points in Florida should pass over two or more roads in reaching its destination within the State of Florida the provisions of Rule 19, governing joint rates are modified, so that the initial road should have the right to deliver shipments to the delivering road at such junctional point, within the State of Florida as it might desire, provided, however, that the rate charged for such shipment should be based upon the shortest mileage between the points of shipment and the point of destination.

6. That the said Railroad Commissioners then further ordered that the said rate therein prescribed should be effective on and after the 15th day of January, A. D. 1904. Copies of the order and of Rule 19, are attached as parts of the writ, and marked exhibits "A" and "B."

7. That the Railroad Commissioners prior to the 15th

day of January, A. D. 1904, furnished all railroads doing business within the State with notice of the changes and revisions adopted by the said order, stating the time when the said changes and revisions would go into effect.

8.   That although the Atlantic Coast Line Railroad Company was furnished with notice of the changes of phosphate rates as aforesaid, it has not obeyed said order, and has not put into effect the schedule of rates prescribed in and by said order, but refuses so to do, and in violation and disregard of the rate prescribed in and by said order, and contrary to the laws of Florida, now charges, and since the 15th day of January, A. D. 1904, has charged for the transportation of phosphate over its said lines of railroads, and railroads under its control or management, from points in Florida, to points in Florida, rates in excess of the rates prescribed in and by said order, and the said Atlantic Coast Line Railroad Company has refused, and still refuses, to otherwise comply with all and singular the aforesaid and other commands and directions of the said order of the said Railroad Commissioners made on the 17th day of December, A. D. 1903.

9.   This, the ninth, paragraph concludes:   "Now, therefore, we, being willing that full and speedy justice should be done in the premises, do command you, the Atlantic Coast Line Railroad Company, to forthwith put into operation and effect over all your lines of railroads, and all railroads which are under your management or control, which are wholly or in part within the State of Florida, the rate prescribed in and by said order of the said Railroad Commissioners on the 17th day of December, A. D. 1903, to be charged by all the railroads and common carriers doing business wholly or in part within the State of Florida, for the transportation of phosphate from points in the State of Florida to points within said State, and do command you to further comply with all the commands and directions of said order of the said Railroad Commissioners, as contained in a duly certified copy of said order, which is hereto at-

tached and marked Exhibit A and made a part hereof, to the same extent as if fully set out herein, and that you continue to comply with all the commands and directions of said order, as long as the same shall be in force, or that you appear before the Justices of our Supreme Court sitting within and for the State of Florida, at the court room in the city of Tallahassee, on the 29th day of March, 1904, at ten o'clock A. M. of said day, and show cause why you refuse to do so, and have you then and there this writ."

"EXHIBIT A.

ORDER No. 34.

RAILROAD COMMISSION, STATE OF FLORIDA.

IN THE MATTER OF FREIGHT RATE FOR THE TRANSPORTATION OF PHOSPHATE FROM POINTS IN FLORIDA TO POINTS WITHIN THE STATE OF FLORIDA.

Due notice having been given to all the railroads doing business wholly or in part within the State of Florida, that there would be a meeting of the Railroad Commissioners in the city of Jacksonville on the 16th day of November, A. D. 1903, for the purpose of considering the adoption of a freight rate of one cent per ton per mile on phosphate shipped from points within the State of Florida to points within said State, except to such points where the proposed rate would raise the rate in force to such points, at which time all railroad companies and common carriers would be given an opportunity to be heard and show cause, if any they had, why the proposed rate should not be adopted:

In accordance therewith the Commissioners met at the Board of Trade rooms in the city of Jacksonville on said 16th day of November, and the railroads were given an opportunity to be heard, and answers were filed by the Atlantic Coast Line R. R., Seaboard Air Line Railway, and the Jacksonville & Southwestern Ry., and request made by them that they be given until November 28th in which to file their briefs and supplemental briefs, which request was granted,

and the briefs having been received by the Commissioners, and duly considered by them in connection with the proposed reduction in the phosphate rate, and the Commissioners being satisfied that some of the present freight rates on phosphate from points in the State of Florida to points within the State, are unreasonably high, and should be reduced and based upon a mileage rate:

IT IS THEREFORE ORDERED BY THE RAILROAD COMMISSION OF THE STATE OF FLORIDA, that the rate to be charged by all railroads and common carriers doing business wholly or in part within the State of Florida, for the transportation of phosphate from points in the State to points within the State, shall not exceed one cent per ton per mile.

Provided, however, that where the rate of one cent per ton per mile will raise any rate now in operation, that said rate of one cent per ton per mile shall not be effective, but the rate as now charged by the railroad companies is hereby adopted by the Railroad Commissioners as their rate between such points.

It is further ordered, that where a shipment of phosphate shall pass over two or more railroads in reaching its destination within the State of Florida, the initial line may charge one and a half cents per ton per mile for the first ten miles which said phosphate shall be hauled.

It is further ordered, that where phosphate from points in Florida passes over two or more roads in reaching its destination within the State of Florida, that the provisions of Rule 19, governing joint rates is hereby modified, so that the initial road shall have the right to deliver the shipment to the delivering road at such junctional point within the State of Florida as it may desire.

Provided, however, that the rate charged for such shipment shall be based upon the shortest mileage between the point of shipment and the place of destination.

It is further ordered that this rate shall be effective on and after January 15, 1904.

State *ex rel.* Att'y-Gen. v. A. C. L. R. R. Co. *et al.*—Statement.

Done and ordered by the Railroad Commissioners of the State of Florida, in session at their office in the city of Tallahassee, Florida, this 17th day of December, A. D. 1903.

Attest:                    (Signed)   JEFFERSON B. BROWNE,
   R. C. DUNN,                                 *Chairman.*
      *Secretary.*

I, R. Hudson Burr, as Acting Chairman of the Railroad Commissioners of the State of Florida, do hereby certify that the above and foregoing is a full, true and correct copy of the order adopted by the Railroad Commissioners of the State of Florida, on the 17th day of December, A. D. 1903, in the matter of freight rate for the transportation of phosphate from points in Florida to points within the State of Florida, as the same appears upon the record of the proceedings of said Commissioners.

Witness my hand this 7th day of March, A. D. 1904.

                         R. HUDSON BURR,
                 *Acting Chairman of the Railroad Com-*
                 *missioners of the State of Florida."*

"EXHIBIT B.

JOINT RATES SHALL BE SUM OF LOCALS.

19.  On all shipments of freight not governed by Rule No. 1, originating and terminating in this State, which shall pass over the whole of two or more roads not under the same control, the maximum rates charged on such shipments shall not be greater than the sum of the local rates on such freights for the distance hauled over each road.  The total rate thus ascertained on such freights from the point of shipment to the point of destination shall be divided in such proportions between the roads over which such freights pass so as to give to each road interested in the shipment its local rate for the distance such shipment is hauled, conditioned upon the initial line delivering the traffic to the delivering road at its nearest junctional point.  Nothing in this rule shall be construed to prevent the total of any joint

122     SUPREME COURT OF FLORIDA,

State *ex rel.* Att'y-Gen. v. A. C. L. R. R. Co. *et al.*—Statement.

rate made under this rule from being divided in such proportions between the roads interested in the same as they may agree upon, but a failure to so agree between the roads interested shall in no way affect the total joint rate to be charged and collected on, or work delay in the transportation of such freight, or be subject of appeal to the Commission by the roads at interest; provided, however, that no railroad company shall discriminate between any other two or more railroad companies when the conditions and circumstances are practically the same.

I, R. Hudson Burr, as Acting Chairman of the Railroad Commissioners of the State of Florida, do hereby certify that the above and foregoing is a full, true and correct copy of Rule 19, governing joint rates, as prescribed by the Railroad Commissioners of the State of Florida, and as the same appears upon the record of the proceedings of the said Railroad Commissioners.

Witness my hand this 7th day of March, A. D. 1904.

R. HUDSON BURR,
*Acting Chairman of the Railroad Commissioners of the State of Florida."*

The respondent filed the following demurrer to the foregoing alternative writ: "Now comes the defendant, the Atlantic Coast Line Railroad Company, a corporation, and says that the alternative writ is bad in substance and insufficient in law to be answered.

The substantial matters of law intended to be argued are as follows: 1. Said writ does not state or specify any instance or case of a shipment of phosphate falling within the provisions of the order of the 17th day of December, A. D. 1903, as alleged by said alternative writ to have been made by the Railroad Commission of the State of Florida, in which this defendant has disobeyed said order of December 17th, 1903, or has made a charge in excess of the rate prescribed by said order for the transportation of

phosphate over its line of railroad from points in Florida to points in Florida.

2. The said alternative writ does not state or specify any instance or case in which there has been a violation of the order of the Railroad Commission of the State of Florida, alleged to have been made on the 17th day of December, 1903, or set up any facts showing that there had been a violation of such order by this defendant, by charging a rate or rates in excess of the rates prescribed by said order of December 17th, 1903.

3. The alternative writ aforesaid fails to state or set forth facts showing that there has been a violation in any way by this defendant of said order of December 17th, 1903, alleged by said alternative writ to have been made by the Railroad Commission of the State of Florida.

4. The said alternative writ, in so far as it attempts to show any violation of the alleged order of December 17th, 1903, of the Railroad Commission of the State of Florida, is a mere statement of opinion and conclusion as a matter of law of the State of Florida and relators of a violation of law by defendant of said order of December 17th, 1903, alleged by said alternative writ to have been made by the Railroad Commission of the State of Florida, and fails to set up any fact or facts upon which this Honorable Court can form an opinion as to whether there has been a violation of such order of December 17th, 1903, by this defendant in any case or cases, instance or instances, of a shipment or shipments of phosphate from any point in Florida to another point in the State of Florida, falling within the provision of said order.

5. The said writ fails to inform the defendant of the specific instance or instances in which said order of December 17th, 1903, has been violated by this defendant by charging a higher rate than that prescribed by said order upon shipment of phosphate from a point in Florida to a point in Florida.

6. · That said alternative writ is otherwise and in all respects insufficient in law to be answered unto by this defendant.

> JOHN E. HARTRIDGE,
> *Attorney for Defendant."*

*W. H. Ellis,* Attorney-General, and *J. M. Barrs* for plaintiff.

*Jno. E. Hartridge* for Atlantic Coast Line R. R. Co.

*Geo. P. Raney* for Seaboard Air Line Ry. Co.

*E. J. L'Engle* for Jacksonville & Southwestern R. R. Co.

HOCKER, J. (*after stating the facts*).—It will be observed that the first, second, third, fourth and fifth grounds of demurrer present in various forms of statement the proposition that the alternative writ is bad and insufficient in law, because the recitals of the writ alleging a refusal of the respondent to put into effect the rates on phosphate prescribed by the order of the Railroad Commissioners are wanting in certainty, and amount simply to a conclusion of law. It is insisted that instances of violation should be set forth. This proceeding is instituted at the instance of an .official body, the Railroad Commissioners, to compel the respondent to put into effect and practical operation the schedule of rates and system of rating prescribed in the order, and is not intended to compel the company to carry any particular phosphate for any particular individual. The writ recites that the order became effective on the fifteenth of January, 1904, and that respondent has not put into effect the schedule of rates prescribed therein, but refuses so to do, and in violation and disregard of the prescribed rates, now charges, and since the 15th day of January, 1904, has charged for the transportation of phosphate over its lines of railroad, and railroads under its control and management

from points in Florida to points in Florida, rates in excess of the rates prescribed in and by said order, and it has refused and still refuses to comply with all and singular the aforesaid, and other commands. and directions of the said order of the Railroad Commissioners made on the 17th day of December, A. D. 1903. We think the recitals clearly import a refusal to comply with the said order in each and all of its directions—in other words, a refusal to comply with the schedule of rates as a system of rates. The allegation that the respondent now charges, and since the 15th day of January, 1904, has charged for the transportation of phosphate rates in excess of the prescribed rates, simply accentuates and points out the particular thing which respondent is alleged to be doing, signifying its refusal to put into effect the prescribed schedule of rates and its violation and disregard thereof. The recitals of this writ thus used to compel the observance of a system or schedule of rates on phosphate are of similar import to those employed by the distinguished pleader who drew the writs in the unreported case of *State ex rel. Attorney-General v. Florida Southern Railway Company,* which was presented to this court in December, 1888, to compel the observance of the schedule of rates prescribed by the Railroad Commission on oranges. The writ in that case was subjected to the most ingenious and rigorous criticism, but was held good by this court. The argument that if instances of violation were cited in the writ such instances could probably be considered so as to show that such instances did not come under the jurisdiction of the State Railroad Commission, is not constraining. Our opinion is that the question whether this or that case can be used in support of a charge of a total disregard and violation of the order of the commission, is one involving the relevancy, competency and probative force of evidence, and not one of pleading.

It is contended on several grounds that the recitals of the eighth paragraph of the writ taken separately, amount to no more than conclusions of law. We think, however, that this

paragraph is to be considered as a whole, and, being so considered, is not substantially indefinite or uncertain. It is one sentence, the several recitals of which are connected by copulative conjunctions, and each separate allegation is to be construed by its contextural connections. Thus considered it charges a general violation of the duty of the respondent in refusing to put the prescribed rule into practical operation, and by way of re-enforcement of this charge, that it is, and has been charging rates in excess of those prescribed. Certainty of allegation is requisite, but if the alternative writ states the facts on which the demand is based with sufficient precision to express the right of relator and the duty of the respondent in such a manner that the ordinary mind may easily apprehend them, we think this is all the certainty required to defeat a demurrer. *Central D. & P. Tel. Co. v. Commonwealth,* 114 Pa. St., 592, 7 Atl. Rep. 926 ; *Fisher v. Mayor, etc., of Charleston,* 17 West Va. 628 ; 13 Ency. Pl. & Pr., 674-5 and notes.

It is also objected that the writ does not recite the existence of phosphate, nor any tender of the same for transportation, nor refusal to transport any specific tender of phosphate at the prescribed rates. We do not think this is a tenable position on this demurrer. It is true, that generally material facts should be alleged by direct averment, and not by inference, but unequivocal averments will support implications that necessarily result, at least, on general demurrer. 6 Ency. Pl. & Pr., 269 ; *State ex rel. Attorney-General v. Johnson,* 35 Fla. 2. Special demurrers which at common law reached defects of formal statement, are abolished in this State. This court, like other courts, will take judicial notice of matters of common knowledge, and, therefore, knows that phosphate is produced in some portions of Florida, and is an article of transportation. The allegation that excessive charges are made for the transportation of phosphate necessarily implies that phosphate is tendered for transportation, and is transported, for if it were not actually tendered and offered for transportation, it could not be transported.

VOL. 48, JUNE TERM, 1904. 127

State *ex rel.* Att'y-Gen. v. A. C. L. R. R. Co. *et al.*—Opinion of Court.

It is objected that the phrase "put into effect" and the word "charge," used in the eighth paragraph, and the mandatory clause, are indefinite, and indeterminate in their meaning. To put a rate into effect is to charge and receive that rate when the article to which it applies is transported; in other words, to give it practical operation. To charge is to "lay on," or "impose" as a load, tax or burden, to fix or demand a price for a thing or service. The phrase and word are of the most common use, and we fail to see how there can be any substantial difficulty in discovering their meaning.

We might close the opinion at this point, but the discussion both orally and in the briefs has taken a wider range than is indicated in any ground of the demurrer. It is insisted that the order of the Railroad Commissioners is void, because it prescribes a less rate than one cent a ton per mile, where at the date of the order, a less rate was then being charged, which in effect amounts to a discrimination in favor of certain individuals, classes or communities and which is prohibited by the Railroad Commission act, Chapter 4700, laws of 1899. We discover nothing in the act or the order, properly construed, which sustains this contention. Railroads and common carriers, it is true, are inhibited from making unjust discriminations in rates (sec. 4), but we discover nothing in the act which limits the discretionary powers of the Railroad Commission to make reasonable and just rates. It does not necessarily follow that in prescribing a particular rate lower than the general one, the commission have violated their authority. There may be circumstances which would justify such lower rates, and the act itself (sec. 8) makes the rates and regulations prescribed by the commission *prima facie* reasonable and just. The proviso of the order properly construed applies only to general rates to the public, and not to special rates given by railroad companies to individuals, if any such were given, as contended by the defendant.

It is further contended in argument that mandamus does not lie to enforce a continuing duty. We do not think this a

sound contention. In the case above cited, as also in the case of *State ex rel. Attorney-General v. Pensacola & A. R. Co.,* 27 Fla. 403, 9 South. Rep. 89, and *State ex rel. Attorney-General v. Jacksonville Terminal Company,* 41 Fla. 377, 27 South. Rep. 225, some portions of the duties enforced by mandamus were of a continuing nature. See, also, *Attorney-General v. City of Boston,* 123 Mass. 460 ; *People ex rel. Jackson v. Suburban R. Co.,* 178 Ill. 574, 53 N. E. Rep. 349 ; *People v. New York Central and Hudson River R. R. Co.,* 28 Hun. 543, and particularly *Goodell v. Woodbury,* 71 N. H. 378, — Atl. Rep. —; *Town of Mason v. Railroad Co.,* 51 West Va. 183, — S. E. Rep. —. And there is no doubt that mandamus is an appropriate remedy to compel observance of a valid regulation of the Railroad Commissioners imposing specific public duties upon railroad companies. 2 Elliot on Railroads, sec. 697 *et seq; State v. Fremont, E. & M. V. R. Co.,* 22 Neb, 313, 35 N. W. Rep. 118 ; *City of Potwin Place v. Topeka Ry. Co.,* 51 Kan. 609, 33 Pac. Rep. 309. See, also, *State ex rel. City of Bridgeton v. Bridgeton & M. Traction Co.,* 62 N. J. L. 592, 43 Atl. Rep. 715.

It is contended that the mandatory clause of the writ is broader in its terms and meaning than its recitals will support. We do not regard this as a sound contention. We deem it proper to say here, in order to prevent misapprehension, that we regard the recitals and mandatory part of the writ as embracing but one subject and purpose, *viz;* as reciting a total violation in each and all its directions of the order of the Railroad Commissioners, and as seeking to compel respondent to observe and put said order into effect and practical operation as a totality. Upon a proper issue joined if the relator does not show that respondent was and is violating and refusing to observe the several rates which make up the whole schedule, the question would arise whether a peremptory writ could be issued. *State ex rel. Moody v. Call,* 39 Fla. 165, 22 South. Rep. 266 ; *Florida C. & P. R. Co. v. State ex rel. Town of Tavares,* 31 Fla. 482, 13 South. Rep. 103 ; Tapping on Mandamus, top page 369,

VOL. 48, JUNE TERM, 1904. 129

State *ex rel.* R. R. Com'r's *et al.* v. S. A. L. Ry.—Syllabus.

(marg. *324); *Haskins v. Board of Supervisors of Scott Co.,* 51 Miss. 406; *Fisher v. Mayor, etc., of the City of Charleston,* 17 West Va. 628.

The demurrer is overruled and the respondent is required to file its return showing obedience to the mandate of the alternative writ, or cause why it is not obeyed, on or before the 12th day of July, A. D. 1904.

TAYLOR, C. J., and COCKRELL, J., concur.

CARTER, P. J., and SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.