State ex rel. Atty.-Gen., v. A. C. L. R. R. Co.—Syllabus.

THE STATE OF FLORIDA EX REL. WILLIAM H. ELLIS, ATTOR-
NEY GENERAL, RELATOR, v. THE ATLANTIC COAST LINE
RAILROAD COMPANY, A CORPORATION, RESPONDENT.

1. When the Railroad Commissioners make a valid order for
   the prevention of unjust discrimination and for the ob-
   servance of rates of freight and passenger tariff made and
   promulgated by them, it is the duty of the railroad com-
   pany or other common carrier to obey such order and
   to promptly, faithfully and completely comply with all
   its legal requirements and such duty will be enforced by
   mandamus.

2. The Railroad Commissioners of Florida have such powers
   only as are expressly or impliedly conferred upon them
   by statute.

3. When mandamus is brought to enforce an order of the Rail-
   road Commissioners, such order should appear on its face
   to be within their power and authority. If the order con-
   tains a material and mandatory provision which does not
   appear from the terms of the alternative writ to be within
   their power and such writ commands a compliance forth-
   with, a demurrer thereto will be sustained since the writ
   must be enforced as a whole, if at all.

4. The Railroad Commissioners are empowered to make rates
   upon the subjects of transportation, not to make rates for
   particular persons or corporations.

5. The court does not take judicial knowledge that there are
   but two telegraph companies in the State.

6. A rate for transportation of men, poles, wires and materials,
   that is applicable by its terms solely to one named tele-
   graph company, is a discrimination, either for or against
   such company, and will not be enforced by mandamus.

7. If a railroad company undertakes to render as a common
   carrier particular services to one person it cannot law-
   fully refuse to render similar services to other persons

under like circumstances upon the payment of like compensation; and if it does so refuse it may be compelled by mandamus to render to all under like circumstances the same service in the same manner and for the same compensation.

This case was decided by the Court En Banc.

This is a case of original jurisdiction.

### STATEMENT.

This is an original proceeding in mandamus brought by the Attorney General in the name of the State under the provisions of Chapter 4700 Acts of 1899 to enforce an order made by the Railroad Commissioners.

The alternative writ is as follows:

THE STATE OF FLORIDA:

TO THE ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION.

WHEREAS, by a petition caused to be filed in this Court by the Railroad Commissioners of the State of Florida, in the name of the said State upon the relation of William H Ellis, Attorney General of said State, it has been made to appear:

That at the City of Tallahassee, on the seventh day of October, 1905, before the Railroad Commissioners of the State of Florida, the Postal Telegraph-Cable Company, a body corporate under the laws of the State of New York, and engaged in a general telegraphic business throughout the United States, with lines of wire in the several States, and in the State of Florida, filed its complaint against the Atlantic Coast Line Railroad Company, a corporation engaged in the business of a common carrier,

and having a line of railroad in the said State of Florida, wherein the said telegraph company alleged that, desiring to extend its line in said State, it had, by regular condemnation proceedings in the Circuit Court for Duval County, Florida, and by the payment of the award fixed by said proceedings, acquired a right of easement to construct, operate and maintain a line of poles and wires upon the right of way of the said defendant railroad company, from the City of Jacksonville to the City of Lakeland, in the said State, and running through the counties of Putnam, Volusia, Orange, Osceola and Polk. That said railroad company, under its charter, and as a common carrier, agreed to distribute between its stations, and has distributed between its stations, for the Western Union Telegraph Company, a foreign corporation engaged in the same business as petitioner, its men, poles, wires and other material, for the erection, maintenance, operation and repair, construction, and re-construction of its lines of wire along the lines of said railroad in said State, and also for all branches of extension thereof, and the said defendant company distributed all men, poles, wires, and other materials, between its stations through the counties of Putnam, Volusia, Orange, Osceola and Polk for said Western Union Telegraph Company, in the erection of its lines of poles and wires, and has continued, and is continuing, to distribute said men, poles, wires and materials for said company between its said stations for the maintenance, operation and repair of said lines, of poles and wires of said Western Union Telegraph Company, under the supervision of the employees of said company. That said Postal Telegraph-Cable Company, prior to the filing of its said complaint, made application to, and demanded of, said rail-

road company that for a just and reasonble compenstion, to be paid said railroad company, said company should render it a service similar to the service rendered to said Western Union Telegraph Company in the distribution between its said stations, in said counties, of the men, wires, poles and materials of said telegraph company, for the purpose of the construction, maintenance, operation and repair of its said line of poles and wires along said right of way of said railroad company. That said railroad company refused to render said services to said telegraph company. That such refusal constituted an unjust discrimination against said telegraph company, and in favor of the Western Union Telegraph Company, giving the said Western Union Telegraph Company an undue and unreasonable preference and advantage over it, and subjecting it to an undue and unreasonable prejudice and disadvantage, in utter violation of the laws of Florida, and of the rules and regulations adopted in pursuance thereof by the Honorable the Railroad Commissioners of the State of Florida, and the prayer of which complaint was for an order directing the said railroad company to render to said telegraph company a similar service, and thus discontinue and prevent the unjust discrimination.

And that thereupon due notice was served upon the said Atlantic Coast Line Railroad Company to show cause before said Railroad Commission at Tallahassee, on the 6th day of November, 1905, why such discrimination should not cease, and why the Atlantic Coast Line Railroad Company should not be required to perform a like service for the Postal Telegraph-Cable Company for a reasonable compensation.

And that at the time and place fixed in said notice, the

said cause came on to be heard, and the said Postal-Tele-graph-Cable Company and the said Atlantic Coast Line Railroad Company appeared before the Commissioners, by their respective counsel, and the commissioners heard the pleadings, testimony and argument of counsel, and re-served their decision.

And that thereafter, to-wit: on the eleventh day of No-vember, 1905, the said Railroad Commissioners made and handed down their decision, which is in the words and figures following, to-wit:

"ORDER NO. 79.   RAILROAD COMMISSION, STATE OF FLORIDA. To THE ATLANTIC COAST LINE RAILROAD COMPANY :"

"Complaint having been made by the Postal Telegraph-Cable Company to the Railroad  Commissioners  of  the State of Florida, that the Atlantic Coast Line Railroad Company is guilty of discriminating against the Postal Telegraph-Cable Company in favor of the Western Union Telegraph Company, by transporting and distributing for the Western Union Telegraph Company its  men,  wire, poles and other material for the erection,  maintenance, operation, repair, construction and reconstruction of its lines of wire along said railroad in this State, and re-fuses to perform a like service for the said Postal  Tele-graph-Cable Company, and due notice having been served on the Atlantic Coast Line Railroad Company to show cause why such discrimination should not cease, and why the said Atlantic Coast Line Railroad Company should not be required to perform like services for the  Postal Telegraph-Cable Company, for a  reasonable  compensa-tion.

"And the said Postal Telegraph-Cable Company and the said Atlantic Coast Line Railroad Company having appeared before the Commissioners, by their  respective

counsel, and the Commissioners having heard the pleadings, testimony and argument of counsel, and having duly considered the same, the Commissioners find that the said Atlantic Coast Line Railroad Company, in hauling and distributing between stations on and along its line of railroad in the State of Florida, for the Western Union Telegraph Company, men, poles, wire and other material, for. the maintenance, operation, repair, construction and reconstruction of all lines of wire, and in refusing to perform like service for the Postal Telegraph-Cable Company, is guilty of discriminating against said Postal Telegraph-Cable Company, and is in violation of Chapter 4700 of the Laws of Florida.

~ "IT IS HEREBY ORDERED by the Railroad Commissioners of the State of Florida that such unjust discrimination be discontinued, and that the said Atlantic Coast Line Railroad Company be, and is hereby required to haul and distribute between its stations on and along its line of railway in the State of Florida, for the Postal Telegraph-Cable Company, its men, poles, wire and other material for the maintenance, operation, repair, construction and reconstruction of all its lines of wire.

"IT IS FURTHER ORDERED by the Railroad Commissioners of the State of Florida that the said Atlantic Coast Line Railroad Company, for such service performed and rendered for the Postal Telegraph-Cable Company may charge the current tariff rates from the point of shipment to the first regular station next beyond the last intermediate place, where any such material is to be unloaded, and the consignor shall furnish all labor necessary to effect such distribution, and shall pay full first-class passenger fares for all men whom they send with said cars to effect such distribution. For the extra ser-

vice and hazard of stopping cars and engines between stations, as above indicated, the railroad company may charge and collect ten ($10) dollars per car in addition to the current tariff rate.

"Done and ordered by the Railroad Commission of the State of Florida, in session at their office in the City of Tallahassee, Florida, this 11th day of November, A. D. 1905.    Jeff'n B. Browne, Chairman.

Attest:    R. C. Dunn, Secretary."

That soon thereafter, the said Postal Telegraph-Cable Company, acting through G. E. Paine, its General Superintendent, made application to the said Atlantic Coast Line Railroad Company to arrange for the hauling and distribution of its men, and material, as contemplated by said order, and, after repeated communications upon the subject, H. M. Emerson, Traffic Manager of said Railroad Company, at Washington, D. C., on December 18th, 1905, wrote to said G. E. Paine, General Superintendent, a letter, as follows, to-wit:

"Referring to correspondence relative to distribution of poles and other materials for the Postal Telegraph Company between points on our line in the State of Florida, and the order of the Railroad Commission relating thereto, I beg to advise that, acting upon the advice of counsel, our company does not intend to carry out the order."

And that the said refusal of the said railroad company to comply with and carry out said order was brought to the attention of the Railroad Commissioners; and, thereupon, an order was passed by said Commissioners direct-the Attorney General of the State of Florida to proceed against the said Atlantic Coast Line Railroad Company to enforce said order.

AND WHEREAS, the State of Florida, by William H. Ellis, the Attorney General of said State, prays that a writ of *mandamus* may issue from this court, directed to the said Atlantic Coast Line Railroad Company, a corporation, commanding it to obey the said order of the Railroad Commissioners of the State of Florida.

NOW, Therefore, we, being willing that full and speedy justice should be done in the premises, do command you, the said Atlantic Coast Line Railroad Company, that you forthwith comply with the said order of the Railroad Commissioners of the State of Florida, or that you show cause why you have not done so before our Supreme Court, at the Capital, in the City of Tallahassee, at ten o'clock a. m., on the first day of March, A. D. 1906, and have you then and there this writ.

> WITNESS, the Honorable Thomas M. Shackleford, Chief Justice of the Supreme Court of Florida, at Tallahassee, this the 13th day of February, A. D. 1906, and the Seal of said Court.
>
> M. H. Mabry, Clerk Supreme Court."

Upon the return day the following demurrer was filed to the alternative writ:

"Now comes the defendant, the Atlantic Coast Line Railroad Company, a corporation, and says that the alternative writ is bad in substance and insufficient in law to be answered.

The substantial matters of law to be argued are as follows:

1.  That the order made by the Railroad Commissioners of the State of Florida is without authority of law.

2.  That there is no authority of law for the Railroad Commissioners of the State of Florida to make a rate

special and applicable to any particular individual or corporation; that they have only powers to make rates applicable to all persons and all corporations.

3. That the Railroad Commissioners of the State of Florida have no power to make a rate special as between stations established by the Railroad Company or by the Railroad Commission.

4. That the Railroad Commissioners of the State of Florida have no power to make an order directing or compelling a carrier to distribute freight at points other than the stations, and there is no authority under the Railroad Commission Act for the Railroad Commissioners to make an order to the Railroad Company to deliver freight alongside of its road and at points between stations.

5. There is no power under the commission act vested in the Commissioners authorizing them to compel the defendant to give to the Postal Telegraph-Cable Company, either by contract or by way of rate made by the Commissioners, the advantages or facilities it gives to the Western Union Telegraph Company by contract.

6. The alternative writ seeks to make a contract for the defendant so as to give the same facilities to the Postal Telegraph-Cable Company that the defendant gives to the Western Union Telegraph Company, and which is without authority of law.

7. That the fact that the defendant is willing to distribute poles, cross-arms and other property between stations to the Western Union Telegraph Company on its right of way, does not impose any like obligation on it to distribute freight for other corporations or individuals.

8. That the powers of the Railroad Commissioners extend only to making reasonable and uniform rates, and rates to bear equally upon all individuals and corpora-

tions moving the same product, and not to make a rate for any individual or corporation for a particular product.                                                  John E. Hartridge,
                                        Attorney for Defendant.
Atlantic Coast Line Railway Company.
By John E. Hartridge, its Atty. in *fact.*"

*Fred. T. Myers* and *Dan'l. W. Rountree,* for Relator.

*John E. Hartridge & Son,* for Respondent.

WHITFIELD, J., *(after stating the facts.)*   The first two grounds for the demurrer to the alternative writ  raises the question of the validity of the order of the Railroad Commissioners which the relator seeks to have enforced.

The Constitution of Florida in Section 30 of Article 16, ordains that "The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property or  performing other  services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures."

The statute, Chapter 4700, Laws of 1899, under which the order purports to have been made, is  the  Railroad Commission Law of the State which contains among its provisions the following:

"Three commissioners shall be  elected" and each  of them is required to subscribe to an  oath  that  among other things he "will well and faithfully perform the duties of Railroad Commissioner."

"That if any railroad, railroad company or other common carrier as aforesaid, shall make any unjust discrimi-

nation in its rates, or charges of toll, or compensation for the transportation of passengers or freight of any description, or for the use and transportation of any railroad car upon any railroad, or upon any of the branches thereof, or upon any railroad or steamship lines connected therewith, which it has a right, license or permission to operate, use or control within this State, the same shall be guilty of violating the provisions of this act, and upon conviction thereof shall be dealt with as hereinafter provided."

"That said Commissioners shall make reasonable and just rates of freight and passenger tariff to be observed by all railroads, railroad companies and common carriers doing business in this State over their respective lines or connecting lines; shall make reasonable and just regulations for the observance of the same as to charges at any and all points for the necessary handling and delivery of all kinds of freight and transportation of passengers, and for the prevention of any unjust discrimination in connection therewith; shall make * * * reasonable and just rates of charges for the use and transportation of all kinds of railroad cars conveying all kinds of freight to and from any and all points in this State; * * * and to direct and control all other matters pertaining to railroads that shall be for the good of the public. * * * Said Commissioners shall have full power and authority to require any railroad, railroad company or common carrier to properly operate its railroad or transportation line and to furnish all the necessary facilities for the convenient and prompt handling, transportation and delivery of all freight offered along its line for transportation and shall provide and prescribe all such rules and regulations as may be necessary to secure such

operation and the furnishing of such  facilities and the prompt handling,  transportation and  delivery  of  all freights offered."

"That said Commissioners shall make and  furnish to each railroad corporation doing business in this State, as soon as practicable, a printed or written schedule of just and reasonable rates and charges for  transportation of freights, passengers and cars on its railroad or railroads under its control or management * * * the railroad companies affected shall furnish at  their own cost  and shall put in conspicuous places the schedule rates, sheets, etc., adopted by the Commissioners according to the rules and regulations made by said Commissioners.  All  the rules and regulations made and prescribed by said Commissioners for the transportation of persons and property on the railroads, subject to the provisions of this act, or to prevent unjust discrimination or other abuses by them shall be deemed and held to be prima facie,  reasonable and just and are made prima facie evidence in the same manner the said schedules are made  prima  facie  evidence."

"Said Commissioners may at their discretion cause to to be instituted in any court of competent jurisidiction in this State by the Attorney General, State Attorney or special counsel in the name of the State proceedings by or for mandamus, injunction, mandatory injunction, prohibition or procedendo, against any such  company  or common carrier subject to the provisions of this  act, or against any officer or officers, agent or agents thereof to compel the observance of the provisions of this act, or any rule, rate or regulation of the Commissioners made thereunder, or to compel the refunding of any moneys exacted in violation of any of the provisions  of this  act.  And

39 S. C .

said Commissioners are hereby given and granted full authority to do and perform any act or thing necessary to be done to effectually carry out and enforce the provisions and objects of this act." Other provisions of the act need not be quoted.

Under this statute enacted pursuant to the above constitutional provisions the Railroad Commissioners have the power and it is their duty to make reasonable and just rates and regulations for the transportation of passengers and for the convenient and prompt handling, transportation and delivery of all freights offered for transportation to railroad companies doing business in this State as common carriers, and for the prevention of any unjust discrimination in connection therewith. The statute also requires the Railroad Commissioners to make and furnish to each corporation doing business in this State a printed or written schedule of just and reasonable rates and charges for transportation of freights, passengers and cars on its railroad or railroads under its control and management.

The alternative writ of mandamus in this case sets out "Order No. 79" of the Railroad Commission, which states that upon complaint after due notice, hearing and consideration the Railroad Commissioners find that the Atlantic Coast Line Railroad Company, in particulars mentioned, is guilty of discriminating against the Postal Telegraph-Cable Company in violation of Chapter 4700, Laws of Florida, and orders that such unjust discrimination be discontinued, and that the service refused be rendered; and further orders "that the said Atlantic Coast Line Railroad Company for such service performed and rendered for the said Postal Telegraph-Cable Company may charge the current tariff rates from the point of shipment to the first regular station next beyond the last in-

termediate place where any such material is to be un-
loaded, and the consignor shall furnish all labor neces-
sary to effect such distribution, and shall pay full first-
class fare for all men whom they send with said cars to
effect such distribution. For the extra service and haz-
ard of stopping such cars and engines between stations,
as above indicated, the railroad company may charge and
collect ten ($10.00) dollars per car in addition to the cur-
rent tariff rate."

Counsel for the respondent admits the power of the
Railroad Commissioners to make freight rates as between
the several stations in the State, but contends that a
freight rate so made must be upon articles named, and
from station to station, and to apply equally to all ship-
pers whether individuals or corporations, and insists that
there is no power in the Railroad Commissioners to make
a specific rate for a specific company for a specific pur-
pose; that its powers are confined to making rates to bear
upon and be applicable to all products of like character
and for all shippers of every product; and that the Com-
missioners cannot make a rate for a particular individual
or corporation to the exclusion of others under like condi-
tions. Under the first and second grounds of the demur-
rer it is contended that a portion of the order sought to
be enforced is invalid in that it undertakes to fix a rate
upon particular subjects of transportation, for a partic-
ular and designated corporation and for a particular pur-
pose.

When the Railroad Commissioners make a valid order
for the prevention of unjust discrimination and for the
observance of rates of freight and passenger tariff made
and promulgated by them, it is the duty of the railroad
company or other common carrier to obey such order and
to promptly, faithfully and completely comply with all

its legal requirements, and such duty will be enforced by mandamus. State ex rel Attorney Gen'l v. Atlantic Coast Line R R Co. et al., 48 Fla. 114, 37 South. Rep. 652; State ex rel. Atty Gen'l v. Jacksonville Term'l Co., 41 Fla. 377, 27 South. Rep. 225.

The Railroad Commissioners of Florida are statutory officers whose powers are those and only those which are conferred upon them expressly or impliedly by the statutes of the State.

When mandamus is brought to enforce an order of the Railroad Commissioners, such order should appear on its face to be within the power and authority of the Railroad Commissioners to make; and if the order contains a material and mandatory provision which does not appear from the terms of the alternative writ to be within the power of the Railroad Commissioners to make, and the alternative writ commands the respondent to "forthwith comply with the said order" or show cause for not doing so, a demurrer to the alternative writ will be sustained, since the order must be enforced as a whole if at all. See Florida C. & P. Ry. Co. v. Town of Tavares, 31 Fla. 482, 13 South. Rep. 103; State ex rel. Edwards v. County Commissioners, 22 Fla. 1; State ex rel. Oliver v. Grubb, 85 Ind. 213; Tapping on Mandamus side pages 16, 327.

The power and duty to make and promulgate reasonable and just rates or charges for transportation of passengers and for the handling, transportation and delivery of freights conferred upon the Railroad Commissioners by Chapter 4700 of the Acts of 1899, relate to rates to be made upon the subjects of transportation and not to rates to be made for particular persons or corporations. Such rates or charges should be made general in their nature and applicable alike to all persons and corporations under like circumstances, and should not in terms or in

effect be made applicable to only one person or corpora-
tion to the exclusion of other persons or corporations
under like circumstances. Rates or charges made gen-
eral in their terms may be applicable to only one person
or corporation because no other person or corporation is
in like circumstances, and this would not make the rates
or charges special; but even in such cases the rates or
charges should be made general in their terms and should
not in terms be made applicable to a particular or desig-
nated person or corporation. The Railroad Commission
Law, Chapter 4700, is designed to prevent unjust dis-
criminations, and to this end it provides for the making
and enforcing of rates or charges upon subjects of trans-
portation applicable alike to all persons or corporations
in like circumstances, and for preventing the giving of
different rates to different persons under like circum-
stances.

Counsel for the State contends in the brief that what-
ever is done by a railroad company for one in the dis-
charge of its duty as a common carrier, it must do for
all; but practically admits that the rate stated in the or-
der sought to be enforced has not been fixed on the sub-
jects of transportation mentioned so as to be applicable
to all persons or corporations under like conditions,
since it is urged that the rate given in the order is gen-
eral because as a matter of common knowledge and so far
as the Railroad Commissioners were advised, the Postal
Telegraph-Cable Company, is the only one, except the
Western Union Telegraph Company, in like situation. If
this be so, the rate should by its terms be general so as to
apply to the Postal Telegraph-Cable Company and the
Western Union Telegraph Company, and all other Tele-
graph Companies that may offer like goods for carriage

under like circumstances and conditions. It is not within the judicial knowledge of the court that there are only two telegraph companies who could demand like service, and there is no such allegation in the alternative writ. The records of this court disclose litigation by Telegraph Companies other than the two above mentioned. Besides, it is a matter of common knowledge that much the same subjects of transportation as those referred to in the alternative writ, and the uses made of them, are common to telephone companies as well as to telegraph companies.

In view of the terms of the order here sought to be enforced, it cannot be presumed that the rate therein mentioned had been fixed and made applicable to all shippers under like circumstances. The order refers to current rates and adds therto further charges for certain services to be rendered to the Postal Telegraph-Cable Company by the respondent as a common carrier in the handling, transportation and delivery of the subjects of transportation to which the mentioned current rates apply, and there is nothing in the alterantive writ to indicate that such additions to the current rates had been fixed for such service in connection with these subjects of transportation and made applicable to all shippers in like circumstances.

The rate contained in this order is by its terms confined to the Postal Telegraph-Cable Company and should it be different from the rate applied to others in like circumstances it might result in an unjust discrimination for which a penalty would be imposed on the respondent under the railroad commission law.

Where a rate of charges has been duly made upon the subjects of transportation and for the service here de-

manded, applicable alike to all persons and corporations under like conditions, the Railroad Commissioners may by proper proceedings make an order requiring such service to be rendered to any particular person or corporation upon the payment of the rates or charges so prescribed, and such order should be obeyed and will be enforced; but where as in this case the order in terms provides "that the said Atlantic Coast Line Railroad Company for such service performed and rendered for the Postal Telegraph-Cable Company may charge," etc., and there is nothing in the alternative writ to indicate that the rates and charges made by the order for the Postal Telegraph-Cable Company are the rates and charges made by the Railroad Commissioners for all persons or corporations demanding like service under like circumstances, there is no presumption that the rate stated in the order has been made applicable to all shippers in like circumstances, and the rate so made is not a valid and enforceabel one. There is no question here as to the reasonableness of the rates or charges, the sole question being the validity of the order making the rates and charges in terms "for the Postal Telegraph-Cable Company" individually on subjects of transportation offered by it alone to a common carrier.

The two orders made by the Railroad Commissioners of Georgia and Tennessee in cases similar to this one set forth by counsel for the State in the brief do not infringe the principle herein announced, since the order in the Georgia case in terms provides that the service required shall be rendered "upon the same terms and conditions as the same are transported for other telegraph and cable companies engaged in like business without discrimination for or against either of said companies" and the gen-

eral rate fixed for such service is set out therein as rule 37; and in the Tennessee case the service is required to be rendered "upon the payment of such reasonable compensation as may be agreed upon between said Postal Telegraph-Cable Company, and the said Mobile & Ohio R. R. Co."

In the case at bar the order makes the rate given therein in terms applicable only to the Postal Telegraph-Cable Company, and there is nothing to indicate that such rate has been made applicable to any other person or corporation in like circumstances, and the order is, therefore, in itself a discrimination either against or in favor of said company, to prevent which discrimination is one of the chief purposes of the Railroad Commission Law.

It follows that the portion of the order required to be obeyed which undertakes to make a rate of charges for the subjects of transportation mentioned in the order applicable in terms only to the Postal Telegraph-Cable Company is not in compliance with the law authorizing the Railroad Commissioners to make and promulgate rates of charges for the transportation of passengers and for the handling, transportation and delivery of freight, and it cannot be enforced. It also follows under the authorities above cited that as the order cannot be enforced in its entirety it cannot in view of the terms of the command in the alternative writ be enforced at all.

The alternative writ alleges that the respondent as a common carrier has rendered and is rendering for the Western Union Telegraph Company similar service to that which the State here seeks to require of the respondent for the Postal Telegraph-Cable Company, and this is admitted by the demurrer.

If a railroad company undertakes to render particular services as a common carrier to one corporation it cannot lawfully refuse to render similar services to other corporations under like circumstances upon the payment of like compensation; and if it does so refuse it may be compelled by mandamus to render to all under like circumstances the same service in the same manner and for the same compensation. See State ex rel. Attorny General v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225; Cumb. Tel. Co. v. M. L. & T. 51 La. Ann. 29, 24 South. Rep. 803, 72 Am. St. 442; 5 Am. & Eng. Enc. Law (2nd. ed.) 177; 6 Cyc. 372; State ex rel. Cumb. Telephone & Telegraph Company v. Texas & P. Ry. Co., 52 La. Ann. 1850, 28 South. Rep. 284.

The demurrer is sustained, and the alternative writ is quashed.

SHACKLEFORD, C. J., TAYLOR, COCKRELL, HOCKER and PARKHILL, JJ., concur.